**Robert Bolivar DePUGH, Appellant,**

v.

**UNITED STATES of America,
Appellee.**

**Walter P. PEYSON, Appellant,**

v.

**UNITED STATES of America,
Appellee.**

**Troy HAUGHTON, Appellant,**

v.

**UNITED STATES of America,
Appellee.**

**Nos. 18732, 18733 and 18772.**

United States Court of Appeals
Eighth Circuit.

Sept. 30, 1968.

See also D.C., 266 F.Supp. 453.

Charles B. Blackmar, St. Louis, Mo., for appellants, DePugh and Peyson; Albert L. Rendlen, of Rendlen & Rendlen, Hannibal, Mo., William H. Costello, and William J. Gilwee, Kansas City, Mo., on the briefs.

William J. Gilwee, Kansas City, Mo., for appellant Haughton; J. Whitfield Moody and John J. Cosgrove, Legal Aid & Defender Society of Greater Kansas City, Kansas City, Mo., on the briefs.

Anthony P. Nugent, Jr., Asst. U. S. Atty., Kansas City, Mo., for appellee; F. Russell Millin, former U. S. Atty., and Calvin K. Hamilton, present U. S. Atty., on the briefs.

Before MEHAFFY, GIBSON and LAY, Circuit Judges.

PER CURIAM.

Defendants DePugh, Peyson and Haughton were convicted by trial to a jury of violations of the National Firearms Act. The indictment was cast in three counts.[1]

1. The indictment, omitting its formal parts and the thirty-five overt acts, reads as follows:

"*COUNT I*

"That from on or about the 31st day of May, 1963, and continuously thereafter up to and including the date of the filing of this indictment, in the Western District of Missouri and elsewhere, ROBERT BOLIVAR DEPUGH, a/k/a Bob DePugh; WALTER PATRICK PEYSON, a/k/a George; JAMES TOLLERTON, a/k/a Jim Tollerton; TROY HAUGHTON, a/k/a Troy Houghton; and JOHN E. BLUMER, the defendants, and RAITHBY ROOSEVELT HUSTED, named herein as a co-conspirator but not as a defendant, did wilfully, knowingly and unlawfully, combine, conspire, confederate and agree together and with each other, and with divers other persons whose names are to the Grand Jury unknown, to commit offenses against the United States, to-wit, to violate Section 5811, Title 26, United States Code, by transferring firearms as defined in Section 5848, Title 26, United

The first count charges each of the named defendants with conspiracy to violate (1) 26 U.S.C. § 5811, by transferring firearms as defined in 26 U.S.C. § 5848, without paying the required tax; (2) 26 U.S.C. § 5821, by making firearms as defined in 26 U.S.C. § 5848, without paying the required tax; and (3) 26 U.S.C. § 5851, by receiving and possessing firearms as defined in 26 U.S.C. § 5848, which had not been registered as required by 26 U.S.C. § 5841.

Count II charges DePugh and Peyson with violation of 26 U.S.C. § 5851, through possession of a single specifically described firearm on which the making tax had not been paid and the declaration of intention to make had not been filed in violation of 18 U.S.C. § 2, and 26 U.S.C. §§ 5851 and 5861.

Count III charges DePugh and Peyson with unlawfully possessing firearms which had not been registered as required by 26 U.S.C. § 5841, in violation of 18 U.S.C. § 2, and 26 U.S.C. §§ 5851 and 5861.

The three defendants were associated with the Minute Men organization. De-Pugh was the National Coordinator; Peyson, an employee of DePugh, was involved in the operation; and Haughton was the West Coast Coordinator for the organization.

Motions in arrest of judgment and for new trial were timely filed and denied by the district court, its opinions being reported in 266 F.Supp. 417, 266 F.Supp. 435 and 266 F.Supp. 453 (W.D. Mo.1967).

When the case was originally submitted to this court, we directed that additional briefs be filed in view of the Supreme Court's opinion in Haynes v. Unit-

States Code, without paying the required tax; to violate Section 5821, Title 26, United States Code, by making firearms as defined in Section 5848, Title 26, United States Code, without paying the required tax; and to violate Section 5851, Title 26, United States Code, by receiving and possessing firearms as defined in Section 5848, Title 26, United States Code, which had not been registered as required by Section 5841, Title 26, United States Code.

"At the times hereinafter mentioned, the defendants and their co-conspirators did commit, among others, the following overt acts in furtherance of said conspiracy and to effect the objects thereof:

\*　　\*　　\*　　\*　　\*

*"COUNT II*

"That during the period from on or about the 10th day of November, 1965, to on or about the 15th day of December, 1965, in Carroll County, Missouri, and within the Western District of Missouri, ROBERT BOLIVAR DE-PUGH, a/k/a Bob DePugh, WALTER PATRICK PEYSON, a/k/a George, and JAMES TOLLERTON, a/k/a Jim Tollerton, wilfully, knowingly and unlawfully possessed a firearm as defined by Section 5848(2), Title 26, United States Code, to-wit, a MP–40, Schmeisser machine pistol, Caliber 9 mm., Serial Number 6575, which firearm had been made in violation of Section 5821, Title 26, United States Code, in that the making tax of $200.00 had not been paid prior to the making of this firearm, and in that, prior to the making of such firearm, there was a failure to file a written declaration of intention to make such firearm, as required, all in violation of Section 2, Title 18, United States Code, and Sections 5851 and 5861, Title 26, United States Code.

*"COUNT III*

"That during the period from on or about the 10th day of November, 1965 to on or about the 15th day of December, 1965, in Carroll County, Missouri, and within the Western District of Missouri, ROBERT BOLIVAR DEPUGH, a/k/a Bob DePugh, WALTER PATRICK PEYSON, a/k/a George, and JAMES TOLLERTON, a/k/a Jim Tollerton, wilfully, knowingly and unlawfully possessed firearms, that is, a United States Submachine gun, M1, Thompson Model, Caliber .45, Serial Number 94800, a United States Submachine gun, M3, Caliber .45, Serial No. 216602, and a MP–40, Schmeisser machine pistol, Caliber 9 mm., Serial Number 58971, which firearms had not been registered with the Secretary of the Treasury or his delegate, as required by Section 5841, Title 26, United States Code, all in violation of Section 2, Title 18, United States Code, and Sections 5851 and 5861, Title 26, United States Code."

ed States, 390 U.S. 85, 88 S.Ct. 722, 19 L. Ed.2d 923 (1968).

The Government concedes that *Haynes, supra,* requires a reversal and remand for new trial on Count I, striking therefrom the allegations of conspiracy to violate 26 U.S.C. § 5851 by possession of an unregistered firearm required to be registered under the provisions of 26 U.S.C. § 5841. The Government also concedes that Count III must be reversed and remanded with directions to dismiss this count upon the authority of *Haynes, supra,* since that count charges DePugh and Peyson with a violation of 26 U.S.C. § 5851 by possession of an unregistered firearm.

The concessions of the Government are proper insofar as they go. See *Sizemore v. United States,* 393 F.2d 656 (8th Cir. 1968); *Drennon v. United States,* 393 F.2d 342 (8th Cir. 1968); *Dillon v. United States,* 389 F.2d 381 (8th Cir. 1968); and *Cedillo v. United States,* 391 F.2d 607 (9th Cir. 1968).

The problem we have, therefore, is determination of whether the transfer and making charges in the conspiracy count as well as Count II survive *Haynes* and the rationalé of the gambling cases handed down by the Supreme Court on the same day—*Marchetti v. United States,* 390 U.S. 39, 88 S.Ct. 697, 19 L.Ed.2d 889 (1968), and *Grosso v. United States,* 390 U.S. 62, 88 S.Ct. 716, 19 L.Ed.2d 906 (1968).

Preliminarily, we note that each of the Supreme Court cases cited above gives complete and exhaustive treatment to the subject of self-incrimination, and we therefore refrain from a repetition of the cases, statutes and regulations cited therein insofar as possible. We call attention to the fact that this is a Missouri case and that Missouri statutes make it unlawful for any person to sell, deliver, transport, possess or control any machine gun.[2] Additionally, we note that *Grosso, supra,* holds that a defendant may not be convicted of a conspiracy to evade payment of the tax if the constitutional privilege would properly prevent his conviction for failure to pay the tax.

## COUNT I

After eliminating the properly conceded charge of registering a firearm, there remain the charges of conspiracy to transfer and to make firearms as described by § 5848 without the tax having been paid thereon. There is no contention that the firearms are not of a description defined by the federal statute and neither is it contended that defendants failed to assert their constitutional privilege against self-incrimination.

The Government in its supplemental brief suggests that we reverse and remand Count I only insofar as it alleges a conspiracy to make, but advances no

---

2. 41 V.A.M.S. §§ 564.590 and 564.600 provide as follows:

"564.590. Machine gun, possession a felony—exceptions

"It shall be unlawful for any person to sell, deliver, transport, or have in actual possession or control any machine gun, or assist in, or cause the same to be done. Any person who violates this section shall be guilty of a felony and punished by imprisonment in the state penitentiary not less than two nor more than thirty years, or by a fine not to exceed five thousand dollars, or by both such fine and imprisonment; provided, that nothing in this section shall prohibit the sale, delivery, or transportation to police departments or members thereof, sheriffs, city marshals or the military or naval forces of this state or of the United States, or the possession and transportation of such machine guns, for official use by the above named officers and military and naval forces in the discharge of their duties. (R.S. 1939, § 4819)

"564.600. Machine gun—defined

"The term 'machine gun' as used in section 564.590 shall be construed to apply to and include all firearms known as machine rifles, machine guns or sub-machine guns capable of discharging automatically and continuously loaded ammunition of any caliber in which the ammunition is fed to such gun from or by means of clips, disks, drums, belts or other separable mechanical device. (R.S.1939, § 4820)"

argument or suggestion as to disposition of the transfer charge in Count I.[3]

■ This is of no consequence, however, as we have concluded that insofar as the charge of defendants being transferors or makers is concerned, the teachings of *Haynes, Marchetti* and *Grosso,* supra, leave us no alternative but to reverse Count I in its entirety with an order to dismiss the count. This is so because a transferor and a maker are required by federal statute and treasury regulations to file self-incriminating applications in the same form as the one discussed by the Supreme Court in *Haynes,* supra. The Court held filing of such applications was self-incriminating and a properly asserted plea of self-incrimination constituted "a full defense to prosecutions either for failure to register a firearm under § 5841 or for possession of an unregistered firearm under § 5851." *Haynes,* supra, 390 U.S. at 100, 88 S.Ct. at 732.

*The Transferor.*

Title 26 U.S.C. § 5814 provides in part: "(a) General requirements.—It shall be unlawful for any person to transfer a firearm except in pursuance of a written order from the person seeking to obtain such article, on an application form issued in blank in duplicate for that purpose by the Secretary or his delegate. Such order shall identify the applicant by such means of identification as may be prescribed by regulations under this chapter: *Provided,* That, if the applicant is an individual, such identification shall include fingerprints and a photograph thereof.

"(b) Contents of order form.—Every person so transferring a firearm shall set forth in each copy of such order the manufacturer's number or other mark identifying such firearm, and shall forward a copy of such order to the Secretary or his delegate. The original thereof, with stamp affixed, shall be returned to the applicant."

The regulations relative to the transfer of firearms are set forth in 26 C.F.R. 179.95–179.106. The form to be filled out is called Transfer Form 4. Section 179.99 requires the applicant to attach a copy of a photograph taken within one year, his fingerprints and a character certification made by the local chief of police, sheriff of the county, United States attorney, United States marshal, or another person whose certification is acceptable to the Director, Alcohol and Tobacco Tax Division.

The regulations relative to making of a firearm are set forth in 26 C.F.R. 179.75–179.84. Section 179.78 provides for an individual declarant to attach his photograph, affix his fingerprints, and supply the same certificate as required in Form 4 above. The making form is designated as Form 1A.

In order to complete the transfer application, the transferor must describe the firearm and affix an appropriate National Firearms Stamp.[4]

Thus, it is seen that the transfer of a firearm as described in Count I of the indictment requires an individual to give in advance information of a self-incriminating nature, revealing either the unlawful making or receiving of a firearm without payment of the tax. Therefore,

---

3. "For the foregoing reasons, the judgment of the trial court:
 "1. as to Count I should be reversed and remanded for new trial on that part of Count I alleging a conspiracy to make firearms in violation of 18 U.S.C. § 5821;
 "2. as to Count II should be affirmed; and
 "3. as to Count III should be reversed and remanded with directions to dismiss Count III."

4. Title 26 U.S.C. § 5811:
 "(b) By whom paid.—Such tax shall be paid by the transferor: *Provided,* That if a firearm is transferred without payment of such tax the transferor and transferee shall become jointly and severally liable for such tax.
 "(c) How paid.—
 (1) Stamps.—Payment of the tax herein provided shall be represented by appropriate stamps to be provided by the Secretary or his delegate."

the teachings of the Supreme Court in the cited cases accord a defendant, under proper claim of his constitutional privilege, a full defense to his prosecution. The fact that the self-incriminating evidence is required in advance of the transfer is of no consequence. *Marchetti,* supra, 390 U.S. at 52, 53, 54, 88 S.Ct. 697.

*The Maker.*

What we have said with reference to a transferor is equally applicable to a maker of a firearm under 26 U.S.C. § 5821. Here also the statute requires the maker to pay the tax in advance of the making and § 5821(e) provides:

> "(e) Declaration.—It shall be unlawful for any person subject to the tax imposed by subsection (a) to make a firearm unless, prior to such making, he has declared in writing his intention to make a firearm, has affixed the stamp described in subsection (d) to the original of such declaration, and has filed such original and a copy thereof. The declaration required by the preceding sentence shall be filed at such place, and shall be in such form and contain such information, as the Secretary or his delegate may by regulations prescribe. The original of the declaration, with the stamp affixed, shall be returned to the person making the declaration. If the person making the declaration is an individual, there shall be included as part of the declaration the fingerprints and a photograph of such individual."

Here again we are confronted with a situation we cannot distinguish from the Supreme Court cases as there obviously is no material difference in the requirements of the statutes and application forms provided by the Secretary relative to the self-incriminating information required of the taxpayer. If we could perceive any reasonable significant difference, we would be inclined to be swayed by it because of the public interest in law enforcement coupled with the fact that there are a numerosity of firearm cases pending in the inferior federal courts, which make the subject

one of national import best reserved for resolution by the Supreme Court, if possible.

We are not to be understood as holding that the defendants here could not have been validly indicted for violations of the National Firearms Act if the Government is possessed of sufficient evidence, but only conclude that Count I as drafted must be dismissed. It is significant to note that as to these two charges, Count I nowhere alleges a violation of § 5851 which statute will be discussed hereafter. We are necessarily only concerned with what the indictment charges, and not what it might have charged. Deckard v. United States, 381 F.2d 77, 81 (8th Cir. 1967).

## COUNT II

Count II of the indictment charges DePugh and Peyson with violation of 26 U.S.C. § 5851 through possession of a firearm upon which the making tax had not been paid and the declaration of intention to make had not been filed. Mr. Justice Harlan, speaking for the Court in *Haynes,* supra, seems to clearly make a distinction under § 5851 between firearms which had been transferred or made "at any time" and emphasizes the fact that the Court's opinion might be different if the phrase "at any time" had been contained in this section of the statute as it applies to firearms which had not been registered. In *Haynes,* supra, 390 U.S. at 92–93, 88 S.Ct. at 727, Mr. Justice Harlan states:

> "Initially, we must note that each of the other two offenses defined by § 5851 indicates very specifically that the violations of the making or transfer provisions, on which the § 5851 offenses are ultimately premised, can have occurred 'at any time.' An analogous phrase in the registration clause would have made plain beyond all question that the construction now urged by the United States should be accepted; if this was indeed Congress' purpose, it is difficult to see why it did not, as it did in the other clauses, insert the few additional words necessary

to make clear its wishes. The position suggested by the United States would thus oblige us, at the outset, to assume that Congress has, in this one clause, chosen a remarkably oblique and unrevealing phrasing.

"Similarly, it is pertinent to note that the transfer and making clauses of § 5851 punish the receipt, as well as the possession, of firearms; the registration clause, in contrast, punishes only possession. Under the construction given § 5851 by the United States, Congress might have been expected to declare unlawful, in addition, the receipt of firearms never previously registered; indeed, the receipt of the firearm is, under that construction, the central element of the offense. Congress' preference in the registration clause for 'possession,' rather than 'receipt,' is satisfactorily explicable only if petitioner's construction of § 5851 is adopted."

The above language would clearly indicate a distinction in *Haynes,* supra, which sets apart a charge such as contained in Count II here based on a § 5851 violation and we therefore are constrained, at least until the Supreme Court holds otherwise, to hold that the charge contained in Count II, on its face, is a valid and proper one.

The totality of the evidence presented relating to the two invalid counts, combined with the setting of the trial and the asserted error for failure to grant a continuance on account of prejudicial pretrial publicity, leaves us in a position where we think the ends of justice will best be served by remanding Count II for new trial. We are not clairvoyant and cannot possibly ascertain the effect which the evidence produced in connection with the invalid counts of the indictment had on the jury's verdict, and certainly we cannot say with any fair assurance that the defendants' substantial rights were not affected, and, therefore, it is only proper that we remand for a new trial. Cf. Kotteakos v. United States, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946); Osborne v. United States, 351 F.2d 111, 117 (8th Cir. 1965). Upon a retrial on this count, the defendants will, of course, have an opportunity to raise any constitutional or other defenses available to them.

For the reasons stated, we reverse Counts I and III with directions that said counts be dismissed, and reverse and remand for new trial Count II of the indictment.