**Dennis Patrick MOWER, Appellant,**

v.

**UNITED STATES of America,
Appellee.**

**No. 18941.**

United States Court of Appeals
Eighth Circuit.

Nov. 4, 1968.

Rehearing Denied Nov. 22, 1968.

Bertrand L. Comparet, San Diego, Cal., for appellant and filed brief and reply brief.

Calvin K. Hamilton, U. S. Atty., Kansas City, Mo., for appellee and filed brief.

Before MATTHES, GIBSON and BRIGHT, Circuit Judges.

PER CURIAM.

In a three count indictment appellant was charged with violation of the National Firearms Act. He was tried on two of the counts, found guilty and has appealed from the judgment of conviction.[1]

1. The third count was transferred to the Central District of California prior to trial and is not in issue here.

Count I charged that between June 7, 1965, and July 8, 1965, appellant had carried an unserviceable submachine gun in interstate commerce from Santa Ana, California, to Independence, Missouri, without having registered it as required by 26 U.S.C. § 5841 in violation of 26 U.S.C. §§ 5855 and 5861. Count II charged that appellant had violated 26 U.S.C. §§ 5851 and 5861 by possessing the submachine gun described in Count I, which had been transferred to him in violation of 26 U.S.C. § 5812(b), in that a notice of tax exemption had not been executed by the transferor.[2]

■ The essential elements of the offenses were established by the Government and the appellant's own testimony. (1) The submachine gun was an unserviceable firearm within the meaning of § 5812(a) (3). The barrel had been arc-welded and closed at the breech end. (2) In May or June, 1965, the gun was transferred in California from one R. M. Baker to appellant. (3) Appellant possessed the gun. (4) During the latter part of June, 1965, appellant carried the gun by automobile from the state of California to Independence, Missouri.[3]

As we view the record, the sole controversy in trial was whether as appellant asserted and testified, he had sent the required notice of tax exempt transfer showing the transfer of the firearm to the Secretary or his delegate. The jury by its verdict resolved this issue against appellant. There is substantial evidence to support this finding. Indeed, appellant does not contend to the contrary.

Appellant purchased the firearm from R. M. Baker, paying him $100 in cash.[4] Appellant was generally familiar with the requirements of the National Firearms Act. He knew that the submachine gun had to be registered, that since it was unserviceable it was necessary for Baker, the transferor, to file the notice of tax exemption in order to avoid payment of the tax required by § 5811. He so informed Baker prior to consummating the purchase of the gun. Baker produced his copy of Form 5 executed by Ivy Armament Company. Appellant took this document to his home, typed a "facsimile" of it, had several copies xeroxed and then returned to Poor Richard's Book Store in Hollywood, California, where the purchase was consummated. There, Baker signed the original and all of the copies. Appellant retained the original. On the same day after appellant had acquired possession of the gun from the police department in Santa Ana, California,

2. Section 5855 provides in pertinent part that it shall be unlawful for any person who is required to register as provided in Section 5841 and who shall not have so registered to carry any firearm in interstate commerce. Section 5811 of 26 U.S.C. provides that there shall be levied, collected and paid on firearms transferred in the United States a tax at the rate of $200 for each firearm. Section 5812(a) (3) provides in effect that the tax shall not apply to the transfer of any firearm which is unserviceable and which is transferred as a curiosity or ornament. Section 5812(b), in issue here, provides that if the transfer is exempt the person transferring such firearm shall notify the Secretary or his delegate of the name and address of the applicant, the number or other mark identifying such firearm and the date of its transfer, and shall file with the Secretary or his delegate such documents and proof thereof as the Secretary or his delegate may by his regulations prescribe.

3. Prior to the date of the alleged offense appellant had been a member of an organization known as the "Minute Men." His journey from California to Missouri was for the purpose of attending a training session of the Minute Men which was held at 613 East Alton Street, Independence, Missouri, the headquarters for the Minute Men organization. Robert B. DePugh was the national coordinator of the Minute Men organization. See DePugh v. United States, 401. F.2d 346 (8th Cir., September 30, 1968).

4. The Government proved that Baker had purchased the gun from the Ivy Armament Company of Windlake, Wisconsin. That company filed "Notice of tax exempt domestic transfer of firearm," on Form 5 in the Office of the Director, Alcohol and Tobacco Tax Division, Internal Revenue Service, Washington, D. C. The form shows that the transfer to Baker was made on May 8, 1965.

where it had been delivered by the Railway Express Company, one copy of Form 5 was mailed by appellant's mother, in his presence, to the Alcohol and Tobacco Tax Division in Washington, D. C.

The official of the Alcohol and Tobacco Tax Division in Washington, D. C., having custody of the original records, testified that there was no record of the gun having been registered by appellant or transferred from Baker to him.

On July 8, 1965, police officers, armed with a warrant for the arrest of Robert Bolivar DePugh, found the machine gun inside a furnace pipe in the basement of the building at 613 East Alton Street, Independence, Missouri. On November 15, 1966, approximately sixteen months after the date of the transportation, appellant appeared at the office of the Alcohol and Tobacco Tax Division in Kansas City, Missouri. There he submitted a letter to Mr. Belecky, the area supervisor, which stated in effect that appellant owned the submachine gun seized at 613 East Alton Street and desired to register it. At the same time he filled out a Form 5 and left it with Mr. Belecky. The form was not sent to Washington, D. C., for filing because it had not been signed, as required, by Baker, the transferor. Belecky did, however, endeavor by registered mail to contact Baker in regard to the alleged transaction between him and appellant. This effort proved futile. The registered letter was returned unclaimed.

Thus, in capsule form, appellant claimed that the notice of tax exempt transfer had been timely sent to the Secretary or his delegate, as required by § 5812(b), that he acted in good faith and without intent to violate the law. The Government's position was, in effect, that the evidence demonstrated that the defense lacked reality. The verdict demonstrates that the jury declined to credit appellant's testimony.

Although appellant attacks the instructions, we believe that the basic question for decision is whether the conviction is subject to the infirmity present in Haynes v. United States, 390 U.S. 85, 88 S.Ct. 722, 19 L.Ed.2d 923 (1968).[5]

■ We hold that Count I does not survive Haynes. In Haynes the defendant was charged with possessing a firearm in violation of 26 U.S.C. § 5851, which had not been registered with the Secretary of the Treasury or his delegate as required by 26 U.S.C. § 5841. The Supreme Court was confronted with the question whether the registration requirement violated the defendant's privilege against self-incrimination as guaranteed by the Fifth Amendment. The Court answered in the affirmative stating: "We hold that a proper claim of the constitutional privilege against self-incrimination provides a full defense to prosecutions either for failure to register a firearm under § 5841 or for possession of an unregistered firearm under § 5851." 390 U.S. at 100, 88 S.Ct. at 732.

Here, the appellant was accused of violating § 5855 by carrying in interstate commerce a firearm which had not been registered as required by § 5841. Beyond doubt, registration by appellant of the gun in question was an essential and vital element of the § 5855 offense. This is true even though the gun was unserviceable. Section 5841 makes no distinction between a serviceable and an unserviceable firearm. The district court so instructed the jury. Therefore, under the rationale of Haynes we cannot escape the conclusion that transportation of a firearm which has not been registered is subject to the same infirmity as possession of an unregistered firearm, and a proper claim of privilege is a full defense.

■ The Government would have us find that appellant voluntarily waived the

**5.** We have considered the impact of Haynes in DePugh v. United States, 401 F.2d 346 (8th Cir., September 30, 1968); Reed v. United States, 401 F.2d 756 (8th Cir., September 26, 1968); Drennon v. United States, 393 F.2d 342 (8th Cir. 1968); Dillon v. United States, 389 F.2d 381 (8th Cir. 1968).

privilege against self-incrimination. It premises this assertion upon the failure of appellant to raise the issue prior to or during the trial and upon the fact that appellant testified in the criminal case of United States v. Robert Bolivar DePugh, tried in Kansas City, Missouri, in November, 1966. It appears that in that case appellant, as a defense witness, testified he had transferred the firearm in question from the state of California to Missouri. But all of this transpired prior to *Haynes*. This is not a case where the accused has knowingly and voluntarily waived a known and existing constitutional privilege. Here, by virtue of the status of the decisional law as it existed prior to *Haynes*, the privilege against self-incrimination did not exist. In this setting, we are not inclined to hold that appellant's acts and omissions prior to *Haynes* should be treated as a waiver of the constitutional privilege. The issue was timely raised and properly presented on appeal. We have considered and applied *Haynes* where the privilege question had not been initially presented on appeal. DePugh v. United States, 401 F.2d 346 (8th Cir., September 30, 1968); Reed v. United States, supra; Drennon v. United States, supra. See Marchetti v. United States, 390 U.S. 39, 88 S.Ct. 697, 19 L.Ed.2d 889 (1968); Grosso v. United States, 390 U.S. 62, 88 S.Ct. 716, 19 L. Ed.2d 906 (1968); Harris v. United States, 390 F.2d 616 (8th Cir. 1968). We reject the Government's claim of waiver.

■ We hold that the conviction under Count II survives *Haynes*. Here, the offense was possession of an unserviceable firearm which had been transferred in violation of § 5812(b). This section and the applicable regulations 26 C.F.R. §§ 179.104b, 179.105 and 179.106, require the transferor (Baker), not the transferee (appellant), to prepare and file the notice of tax exempt transfer. Incriminating evidence, if any, disclosed by the notice of tax exempt transfer, is furnished by the transferor. Since the appellant, as transferee, was not required to and did not in fact file any document in connection with the transfer, he may not successfully invoke the privilege against self-incrimination. Cf. DePugh v. United States, supra; Reed v. United States, supra.

■ Appellant has launched a vigorous attack against the court's instructions. He contends in part that an essential element of the offense is his knowledge that the transferor had not complied with § 5812(b), and that the jury should have been so instructed. Additionally, he takes exception to the last sentence of § 5851 providing that "[w]henever on trial for a violation of this section the defendant is shown to have or have had possession of such firearm, such possession shall be deemed sufficient evidence to authorize conviction, unless the defendant explains such possession to the satisfaction of the jury." Appellant's theory is that submission of this provision [6] plus the failure to instruct on scienter had the effect of shifting the burden of proof to the accused. We disagree. Appellant's contentions have been rejected by this and other courts. Our case of Sipes v. United States, 321 F.2d 174, 179 (8th Cir.), cert. denied, 375 U.S. 913, 84 S.Ct. 208, 11 L.Ed.2d 150 (1963), is apropos. Judge Blackmun stated that scienter is not involved with respect to § 5851. All

6. The court instructed on this provision as follows:

"Any statement of the statutes which I have read to you to the effect that proof of possession by the defendant of a firearm which has not been registered as required by law shall be deemed sufficient evidence to authorize a conviction, unless the defendant explains such possession, must still be understood by you as subject to the general rule that the defendant must be proved guilty beyond a reasonable doubt. The effect of this statement in the statute is only to place upon the defendant the burden of producing evidence to explain how his possession of the firearm is an innocent possession, but it does not require him to prove such facts beyond a reasonable doubt nor even by a preponderance of the evidence."

the scienter which the statute requires is that the defendant's possession of the weapon was a knowing one. "It is not necessary that, in addition to knowing possession, there also be knowledge on the defendant's part that it was made in violation of § 5821." 321 F.2d at 179. Speaking to the last sentence of § 5851 Judge Blackmun observed: "The courts, however, have held that this sentence does not relieve the government of proving all the elements of the claimed offense, and that it encompasses no more than a rule of evidence which comes into effect once possession has been shown." (Citing authorities.)[7] Id.

We have studiously examined the court's charge and find that on at least fifteen different occasions the jury was instructed that the burden was upon the Government to prove appellant's guilt beyond a reasonable doubt.

█ We are convinced that the able and experienced trial judge properly declared the law. The theory upon which the appellant predicated his defense was fully explained to the jury as shown by the following excerpts from the instruction:

"[I]f this defendant honestly believed and had reasonable cause to believe, to honestly believe that the proper papers recording the transfer had been deposited in the United States mail, properly addressed to the Alcohol and Tobacco Tax unit, and postage prepaid, then there would be no criminal intent on the part of the defendant, and I want to explain to you that I have told you that the government has to prove its case beyond a reasonable doubt. The defendant does not have to prove defenses such as this defense beyond a reasonable doubt, but the question is, taking the evidence into account, and this instruction of the law into account, is there a reasonable doubt as to defendant's guilt? In other words, does this destroy the gov-

ernment's case by raising reasonable doubt in your mind? The defendant never has the burden of proof."

\*    \*    \*    \*    \*    \*

"Now, I would say in this case that the simple issue is this: If you believe the defendant's testimony, if you believe that he had an honest, reasonable belief, a belief based on reasonable facts, and certainly those would be facts from which a reasonable man would have such a belief that this gun was a registered gun when he transported it, when he possessed it in Missouri, then you should find the defendant not guilty. If, on the other hand, you do not believe the defendant, and I want to explain to you, as I have said in the instructions, he doesn't have to prove this defense beyond a reasonable doubt or even by a preponderance of the evidence, if this defense is believable enough to you that it raises a question in your mind, a reasonable doubt as to defendant's guilt, then it is your duty under the laws of the United States to find him not guilty."

\*    \*    \*    \*    \*    \*

"Now, these matters are all completely for the determination of the jury and I want to say again, and I cannot over-emphasize this, when you go to that jury room, if you have a reasonable doubt in your mind from all the evidence in this case as to this defendant's guilt, it is your solemn duty under your oath as jurors to vote for an acquittal for the defendant. That is the basic principle upon which our entire system of justice in this country is based, and that is the one instruction I want you to remember above all others."

The judgment of conviction under Count I is vacated with direction to dismiss that count. The judgment of conviction under Count II is affirmed.

7.  From our analysis of the decision of the Supreme Court in *Haynes*, we do not believe that the vitality of *Sipes* in regard to scienter has been impaired.