### UNITED STATES
### v.
### Porter Marcellas WOLFE.
### Crim. No. 28506.

United States District Court
D. Maryland.

Sept. 3, 1969.

Stephen H. Sachs, U. S. Atty., and Stephen D. Shawe, Asst. U. S. Atty., Baltimore, Md., for United States.

H. Carl Butler, Baltimore, Md., court appointed, for defendant.

HARVEY, District Judge:

In this criminal case, the defendant has been charged in a 2-count indictment with violations of various sections of the National Firearms Act. In Count I, it is charged that, in violation of 26 U.S.C. § 5851, the defendant willfully and knowingly *possessed* a sawed-off shotgun which had been made at a prior time in violation of 26 U.S.C. § 5821.[1]

---

1. As the result of the recodification accomplished by Public Law 90–618, 26 U.S.C. § 5821 is now 26 U.S.C. § 5822, and the portions of 26 U.S.C. § 5851 upon which Count I is based are now 26 U.S.C. § 5861(c) and (f). In view of the many cases which refer to these sections as 5821 and 5851, the new references will not be used in this opinion.

In Count II, it is alleged that the defendant willfully and unlawfully *made* a sawed-off shotgun in violation of the aforesaid § 5821.

The defendant has duly filed a motion to dismiss the indictment. Numerous grounds were set forth in the formal motion, but defendant's attorney has stated that the only issue being pressed here is whether under the Supreme Court's decision in Haynes v. United States, 390 U.S. 85, 88 S.Ct. 722, 19 L.Ed.2d 923 (1968), this prosecution is constitutionally permissible as to either of these two counts. In any event, this Court is satisfied that the other points relied upon by the defendant are without merit.

A hearing was originally scheduled on the pending motion for August 8, 1969. After reviewing the pleadings and legal memoranda, this Court concluded that counsel had not sufficiently discussed all of the recent cases which dealt with the issues before the Court. Additional memoranda were therefore requested, and a further hearing was held on August 27, 1969, at which time the matter was fully argued by counsel.

The *Haynes* case, although concerned generally with the National Firearms Act, ruled only on questions presented by §§ 5841 and 5851 relating to the possession of unregistered firearms. The Supreme Court held that a properly pleaded claim of the privilege against self-incrimination barred a prosecution under §§ 5841 and 5851.[2] The Court concluded that Congress intended the clause of § 5851 referring to registration to incorporate the requirements of § 5841, by declaring unlawful the possession of any firearm which has not been registered by its possessor, in circumstances in which § 5841 imposes an obligation to register. Furthermore, it held that in view of the registration provision of § 5841 the constitutional privilege against self-incrimination was a complete defense to a prosecution either for failure to register a firearm under § 5841 or for the possession of an unregistered firearm under § 5851.

The Court carefully declined to rule on other provisions of the National Firearms Act which was described as "an interrelated statutory system for the taxation of certain classes of firearms" (390 U.S. at page 87, 88 S.Ct. at page 725). In fact, the Court's decision applied only to one of the three clauses contained in § 5851, namely, that provision which made it illegal to possess an unregistered firearm.

§ 5821 requires that any person who wishes to make a firearm must declare his intention to do so to the Secretary of the Treasury and pay a tax of $200 on each firearm so made.[3] Under the clause of § 5851 that applies in this case, it is unlawful for any person to possess a firearm made in violation of

2. § 5841 requires (subject to specified exceptions) every person possessing a firearm as defined in the Act to register it with the Secretary of the Treasury. The clause of § 5851 involved in *Haynes* makes it unlawful for any person to possess a firearm which has not been registered as required by § 5841.

3. 26 U.S.C. § 5821 (now § 5822):
"No person shall make a firearm unless he has (a) filed with the Secretary or his delegate a written application, in duplicate, to make and register the firearm on the form prescribed by the Secretary or his delegate; (b) paid any tax payable on the making and such payment is evidenced by the proper stamp affixed to the original application form; (c) identified the firearm to be made in the application form in such manner as the Secretary or his delegate may by regulations prescribe; (d) identified himself in the application form in such manner as the Secretary or his delegate may by regulations prescribe, except that, if such person is an individual, the identification must include his fingerprints and his photograph; and (e) obtained the approval of the Secretary or his delegate to make and register the firearm and the application form shows such approval. Applications shall be denied if the making or possession of the firearm would place the person making the firearm in violation of law."

other provisions of the Act (in this case § 5821).[4] In the pending indictment, it is alleged that the defendant was both the maker and the possessor of the sawed-off shotgun in question.

The first question to be determined here is whether the two sections here involved should be construed together in this case. Defendant has been charged with unlawfully making the weapon and also with unlawfully possessing the weapon. The conclusion is inescapable that if defendant made this sawed-off shotgun, then he must likewise also have possessed it at the time the making was complete. Therefore, as in *Haynes*, the elements of the offenses are identical as applied to *this* defendant who is charged with being both the maker and the possessor. The facts here differ from those present in other cases in which the possessor was not the maker and the courts upheld prosecutions under § 5851 and § 5821. See Reed v. United States, 401 F.2d 756 (8th Cir. 1968); Burton v. United States, 414 F.2d 261 (5th Cir. July 30, 1969). The inquiry under both counts then must be directed to determining whether the declaration required under § 5821 to be made by the defendant as the maker results in his self-incrimination. If no prosecution is legally permissible under § 5821, then both the first and second counts must be dismissed.

Of all the cases which have been referred to this Court, the decision of the Ninth Circuit Court of Appeals in United States v. Benner (decided June 10, 1969), would appear to be the closest on the facts. There, a defendant who was charged with being both the maker and the possessor was convicted of illegally possessing a firearm under § 5851 which had been made in violation of § 5821. In considering the same issue that has been presented here, the Court carefully reviewed the *Haynes* case as well as other recent decisions of the Supreme Court dealing with the constitutional privilege against self-incrimination, namely, Grosso v. United States, 390 U.S. 62, 88 S.Ct. 709, 19 L.Ed.2d 906 (1968), Marchetti v. United States, 390 U.S. 39, 88 S.Ct. 697, 19 L.Ed.2d 889 (1968), and Leary v. United States, 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969). The Court held that under these decisions of the Supreme Court the defendant's privilege against self-incrimination was not infringed by prosecution under §§ 5821 and 5851 under the circumstances there present.

As the *Benner* opinion pointed out, there are three separate possession crimes under § 5851, as follows: (1) possession of a firearm transferred in violation of the Act (namely, § 5814); (2) possession of a firearm made in violation of the Act (namely, § 5821); and (3) possession of a firearm not registered as required by the Act (namely § 5841).[5] Under *Haynes*, it is clear that no prosecution under § 5851 may proceed because of a violation of § 5841. Other cases have held that no prosecution is possible under § 5851 for violations of § 5814. See United States v. Miller, 406 F.2d 1100, 1105–1106 (4th Cir. 1969); DePugh v. United States, 401 F.2d 346 (8th Cir. 1968); United States v. Thompson, 292 F.Supp. 757 (D.Del.1968).

Defendant here urges that since prosecutions under two of the three original clauses of § 5851 have been held unconstitutionally impermissible, prosecution under the third clause must for like reasons fail. At first blush, such a contention is indeed appealing, based as it is on the argument that § 5851 should be construed consistently as to all three of its clauses. However, closer scrutiny of the *Haynes* case and of the different

4. 26 U.S.C. § 5851 (now § 5861(c)):
    "It shall be unlawful for any person—to receive or possess a firearm made in violation of the provisions of this chapter; * * *".

5. In the revised and re-codified version of § 5851 there are 12 separate prohibited acts. See 26 U.S.C. § 5861.

factors that would apply to the prosecution of a maker and possessor of a firearm under the Act suggests that all three of these situations are not so alike as to be necessarily controlled by the same legal principles.

This fact was emphasized by the Court in the *Benner* case. The Court said (at pages 4 and 5 of the slip sheet opinion):

"The maker of the firearm does not, by declaring his intent to make a firearm, of necessity make any declaration of an intention to do these or any other illegal acts. The firearm made could be legally possessed in most states, and we specifically note that it could be legally possessed in Oregon. Its use could be not only legal but laudable, i. e., law enforcement officers in pursuit of dangerous criminals, by persons with permits to carry concealed weapons in defense of their lives, by householders in defense of their homes and persons. We perceive a difference between a law which requires the declaration that one is engaged in an activity which is in itself criminal and one which requires a person to declare an intention to engage in an activity which is not in itself criminal and which does not of necessity lead to any criminal act."

*Marchetti, Grosso, Haynes* and *Leary* all proscribe a statement by a defendant which is self-incriminating when made. In *Marchetti* and *Grosso,* the Court was concerned with gambling, which is widely prohibited under federal and state laws. In both opinions, the Court emphasized that the law of the state in which the accused allegedly conducted his activities (Connecticut in *Marchetti* and Pennsylvania in *Grosso*) had adopted legislation punishing gambling, wagering and ancillary activities. 390 U.S. at page 46, 88 S.Ct. at page 703, and 390 U.S. at page 64, 88 S.Ct. at page 711. *Leary* dealt with possession of marihuana, which is unlawful in all of the states. Again, the Supreme Court emphasized

that possession of marihuana was illegal in New York, the state where the accused claimed the transfer occurred, and also in Texas where he was arrested and convicted. In *Haynes,* though, the Court found self-incrimination because of provisions of federal law, namely other sections of the National Firearms Act itself. That case involved a situation where registration of a firearm under § 5841 would have made the registrant at once criminally responsible under the Act for possessing a weapon in violation of the provisions of § 5851. The Supreme Court said the following in this connection (390 U.S. at page 96, 88 S.Ct. at page 730):

"The registration requirement is thus directed principally at those persons who have obtained possession of a firearm without complying with the Act's other requirements, and who therefore are *immediately* threatened by criminal prosecutions under §§ 5851 and 5861." (Emphasis added)

Under *Miller* and the other cases involving § 5814, *supra,* a transferor who filed the necessary application for the transfer of a firearm would likewise *immediately* incriminate himself under the possession and making provisions of §§ 5821 and 5851.

But here, the declaration by a prospective maker (and possessor) of his intention to manufacture a firearm would not, either at the time of filing or with any reasonable degree of probability in the future, result in his self-incrimination *unless* he resided in a state which made the mere possession of such a firearm a crime. In the *Benner* case, the Court noted that in Oregon (where the case was tried) the sawed-off rifle in question was not legally barred. Unlike *Marchetti, Grosso* and *Leary,* which involved self-incrimination as to acts made illegal in most if not all states, possession of a sawed-off rifle or shotgun is not prohibited in most states.[6]

---

6. Footnote 9 in the *Benner* case lists 45 jurisdictions (including Maryland) which do not prohibit possession of a sawed-off rifle and 6 jurisdictions in which such possession could be a crime.

A careful reading of *Benner* indicates that the decision was not based on the mere fact that the provisions of § 5821 requiring the filing of a written application are prospective in their application. In *Marchetti*, the Supreme Court rejected this rigid chronological distinction which had been adopted in the earlier cases of United States v. Kahriger, 345 U.S. 22, 73 S.Ct. 510, 97 L.Ed. 754 (1953) and Lewis v. United States, 348 U.S. 419, 75 S.Ct. 415, 99 L.Ed. 475 (1955). However, the Supreme Court in *Marchetti* pointed out that where registration provisions are prospective in their application, the risks of self-incrimination are slight. The Court said the following (390 U.S. at page 54, 88 S.Ct. at page 705):

> "Moreover, although prospective acts will doubtless ordinarily involve only speculative and insubstantial risks of incrimination, this will scarcely always prove true. As we shall show, it is not true here."

No such facts were present in *Benner* to indicate a substantial risk of incrimination, either because of the provisions of state or federal law. Nor do any such facts exist here.

Other circuits which have reached the same result as did the Ninth Circuit in *Benner* include the Tenth and presumably the Eighth Circuits. Lewis v. United States, 408 F.2d 1310, 1313–1314 (10th Cir. 1969); DePugh v. United States, 401 F.2d 346 (8th Cir. 1969).[7] Several district court decisions are to the same effect. United States v. Taylor, 286 F.Supp. 683 (E.D.Wisc.1968); United States v. Thompson, *supra*, and United States v. Casson, 288 F.Supp. 86 (D.Del.1968). United States v. Stevens, 286 F.Supp. 532 (D.Minn.1968), which reaches a contrary result, arose

in a state in which the possession of the firearm in question was unlawful.

Under Maryland law, possession of a shotgun or a sawed-off shotgun is not a crime. § 36 of Art. 27 of the Maryland Code punishes only the concealment of a deadly weapon. The defendant points out that § 445(c) of Art. 27 makes it unlawful for a person convicted of a crime of violence to possess a pistol or revolver, which is defined in § 441(c) as a firearm with a barrel less than 12 inches in length. Inasmuch as the pending motion to dismiss has been heard solely on the basis of the allegations of the indictment, there is nothing in the record at this stage of the proceedings to indicate that the risk of defendant's prosecution under this statute is substantial and real.

The defendant here relies heavily on the Fourth Circuit decision in the case of United States v. Miller, *supra*, and in particular on the third section of the opinion found at 406 F.2d 1105–1106. In that portion of the opinion, Judge Sobeloff discusses the applicability of the *Haynes* case to a prosecution under § 5814(a), in the following language:

> "Just as registration under § 5841 'will facilitate prosecution under the making and transfer clauses of § 5851,' application under § 5814(a) provides the Government with the information necessary for prosecution under the possession and making clauses of §§ 5821, 5841 and 5851."

But the same cannot be said here. A declaration of intention under § 5821 does not provide the government with information necessary for prosecution under other sections of the Act. At the time of the filing of the declaration, the prospective manufacturer will not have violated the making, the transfer

---

7. In *DePugh*, the Court upheld one count of an indictment which charged a violation of §§ 5851 and 5821. However, it held a portion of another count of the same indictment, charging a conspiracy to violate § 5821, defective because it

violated the defendant's privilege against self-incrimination. It should be noted, though, that the state involved in *DePugh*, namely, Missouri, made it unlawful to possess the firearm there involved.

or the possession provisions of the Act. However, with reference to the registration requirements of § 5841 and the application requirements of § 5814(a), an individual who is also the maker incriminates himself under the making and possession provisions of the Act at the very moment that the form is completed under those two sections.

In the *Miller* opinion, the Fourth Circuit Court of Appeals cited with approval two decisions which support both the conclusion there reached and this Court's conclusion in the present case, namely, DePugh v. United States, *supra*, and United States v. Thompson, *supra*.[8] In the *DePugh* case, the Eighth Circuit upheld Count II of an indictment drawn in similar form to Count I of the indictment in this case.[9] In United States v. Thompson, the Court said the following (292 F.Supp. at page 765): ·

"I hold, therefore, that in order for defendant to avail himself of the privilege against self-incrimination as an absolute defense to prosecution for possession of an unlawfully made firearm, he must satisfy the court that he was the maker of the gun and that at the time it was made there was in effect a law of the jurisdiction of its making which prohibited such weapons and provided criminal sanctions. Otherwise, the Fifth Amendment privilege is no defense to this aspect of the present prosecution."

Defendant points out that in the *Miller* case the Court found it evident that a prospective transferor under § 5814(a) "realistically can expect that [submitting the application] will substantially increase the likelihood of his prosecution" (citing page 97, 88 S.Ct. page 730 of *Haynes*). It is claimed that the same is true here. Judge Sobeloff in the *Miller* case went on to say the following (at page 1106):

"It is true that situations may be hypothesized in which a potential transferor would not be subject to prosecution under other sections of the Act; he *might, for example, not yet possess* the firearm to be transferred. The Court in *Haynes,* however, dismissed a similar argument, stating that the correlation between obligation to register and potential violations was 'exceedingly high.' The possibility of uncommon situations arising in which compliance with the statutes would not be self-incriminatory does not prevent the dangers of incrimination created by § 5814(a), like those created by § 5841, from being 'real and appreciable.' 390 U.S. at 97, 88 S.Ct. 722."

It can hardly be doubted that the declaration of an intention to make a firearm would *aid* the prosecution of such maker for other crimes that he may have committed. But the test is not this broad. It cannot be said here (as was true in *Haynes* and *Miller*) that such a declaration at once provides the government with the information necessary for prosecution under other provisions of the National Firearms Act. Nor would such declaration result in any real and appreciable danger of self-incrimination under an existing Maryland statute. Under these circumstances, the correlation here between the obligation to fill out a declaration and a potential violation is not high, and the risk of self-incrimination is not so great as to bar prosecution on either of these two counts.

For these reasons, the motion to dismiss is denied.

---

8. The third case cited by the Court in *Miller*, namely, United States v. Stevens, *supra*, was preceded by the introductory signal "cf." indicating that such decision supported a conclusion of law different from that reached in *Miller*, but sufficiently analogous to lend some support thereto. As previously noted, the *Stevens* case arose in a state in which the possession of the firearm in question was prohibited by state law.

9. But see note 7, *supra*, as to the Court's holding with reference to a portion of another count of the indictment charging the different but related crime of conspiracy to violate § 5821.