**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Joseph P. LUCIA, Defendant-Appellant.
(two cases).**

**Nos. 26316, 26317.**

United States Court of Appeals
Fifth Circuit.
Sept. 17, 1969.

Charles Alan Wright, Austin, Tex., Marvin K. Collie, Harry M. Reasoner, Houston, Tex., for defendant-appellant.

Morton L. Susman, U. S. Atty., James R. Gough, Asst. U. S. Atty., Houston, Tex., for plaintiff-appellee.

Before WISDOM and GODBOLD, Circuit Judges, and HUGHES, District Judge.

WISDOM, Circuit Judge:

This appeal turns upon whether the Supreme Court's decisions in Marchetti v. United States, 1968, 390 U.S. 39, 88 S.Ct. 697, 19 L.Ed.2d 889, and Grosso v. United States, 1968, 390 U.S. 62, 88 S.Ct. 709, 19 L.Ed.2d 906, should be applied retroactively. We hold that they should be applied retroactively and reverse the judgment of the district court.

Joseph P. Lucia was indicted in the Southern District of Texas September 18, 1964, on various counts for violation of provisions of the federal statutory scheme for taxing illegal wagers. Lucia first pleaded not guilty to all counts of the indictment, but at his rearraignment January 18, 1965, he changed his plea to guilty to Count 12 of the indictment. That count charged him with attempting to evade the excise tax on wagering (1) by failing to file the required Form 730 (Tax on Wagering Returns), (2) by failing to keep certain records as required by 26 U.S.C. § 4403 and (3) by various acts of concealment, all in violation of 26 U.S.C. § 7201. The court dismissed the remaining counts.

That same day the United States Attorney filed a criminal information charging Lucia and others with conspiring willfully to fail to pay the federal excise tax on gambling, imposed by 26 U.S.C. § 4401, in violation of 18 U.S.C. § 371. The defendant again pleaded guilty. The court sentenced him to consecutive terms of six months on the conspiracy charge and five years on the evasion charge. It also imposed a $10,000 fine on each count. The court suspended the five-year sentence and put Lucia on probation. He has paid the fine and served the remaining six-month sentence.

In January 1968 the Supreme Court decided *Marchetti* and *Grosso*, cases holding that a defendant's assertion of the privilege against self-incrimination under the Fifth Amendment is a bar to prosecution for violation of the federal laws taxing illegal wagers. Relying on

these cases, Lucia filed a motion, in the nature of a writ of error coram nobis, to vacate and set aside judgments and sentences below. Lucia pointed out that although he had completed his sentence, he still remained on probation and was continuing to suffer certain civil disabilities as a result of his conviction. The district court held that *Marchetti* and *Grosso* had not voided the statutes under which Lucia had been convicted, but had merely provided a defense to them; a defense, the court said, that could not be applied retroactively. The court held also that Lucia's guilty plea waived all defenses, including any defense based upon his privilege against self-incrimination. This appeal followed the district court's denial of Lucia's motion.

## I.

We disagree with the district court's holding that Lucia waived his self-incrimination defense when he pleaded guilty. The accepted definition of waiver, adopted by the Supreme Court in Johnson v. Zerbst, 1938, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461, 1466, is "an intentional relinquishment or abandonment of a known right or privilege". The courts will not accept an accused's loss of a constitutional right when he does not understand what he is losing. Miranda v. Arizona, 1966, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694; Boykin v. Alabama, 1969, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274; also see Fed.R.Crim.P. 11. In *Boykin* the Court noted that among the "federal constitutional rights * * * involved in a waiver that takes place when a plea of guilty is entered * * * is the privilege against compulsory self-incrimination". The Court pointed out that the "requirement that the prosecution spread on the record the prerequisites of a valid waiver is no constitutional innovation". As long ago as the decision in Carnley v. Cochran, 1962, 369 U.S. 506, 82 S.Ct. 884, 8 L.Ed.2d 70, the Supreme Court had held: "Presum-ing waiver from a silent record is impermissible."

Lucia had no knowledge of his right against self-incrimination under the *Grosso* and *Marchetti* rule for, at the time, those cases had not been decided. In earlier cases, United States v. Kahriger, 1953, 345 U.S. 22, 73 S.Ct. 510, 97 L.Ed. 754, and Lewis v. United States, 1955, 348 U.S. 419, 75 S.Ct. 415, 99 L.Ed. 475, the Supreme Court had rejected the contention that prosecution under the federal gambling tax scheme violates the Fifth Amendment. Lucia, therefore, could not have "knowingly and intentionally" waived his privilege against prosecution: that privilege did not exist. Johnson v. Zerbst and Miranda v. Arizona invalidate the waiver of rights that the defendant's own inexperience or ignorance prevent him from knowing. By logical extension, these decisions rule out all the more strongly the waiver of a right, such as Lucia's, that is unknown not because of any infirmity on the defendant's part, but because it is unknowable.

This is a dictate of common sense. Precedent supports it. The Supreme Court has repeatedly held that a party cannot be said to waive a right that was judicially created *after* the supposed waiver. Curtis Publishing Co. v. Butts, 1967, 388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed.2d 1094, a *civil* suit for libel, was tried before the Supreme Court's decision in New York Times Co. v. Sullivan, 1964, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686, which recognized for the first time certain First Amendment defenses against libel claims. On appeal, the defendant raised a *New York Times* defense, but the court concluded that the right had been waived. The Supreme Court reversed:

As our dispositions of Rosenblatt v. Baer, 383 U.S. 75, 86 S.Ct. 669, 15 L.Ed.2d 597, and other cases involving constitutional questions indicate, the mere failure to interpose such a defense *prior to the announcement of a decision which might sup-*

*port it cannot prevent a litigant from later invoking such a ground.* Of course it is equally clear that even constitutional objections may be waived by a failure to raise them at the proper time, [citing case] but an effective waiver must, as was said in Johnson v. Zerbst, be one of a "known right or privilege." 388 U.S. at 143, 87 S.Ct. at 1985, 18 L.Ed.2d at 1104. (Emphasis added.)

If Curtis, a defendant in a *civil* case, did not waive an unannounced constitutional defense by his failure to raise it at trial, Lucia, an accused in a *criminal* case, did not waive his constitutional defense.

*Grosso* compels the same conclusion. The defendant there was charged with failure to pay both the occupational tax on gambling and the excise tax on gambling proceeds. At trial Grosso raised constitutional objections to the occupational-tax counts, but not to the excise-tax counts. The Supreme Court reversed, nonetheless, on *all* counts:

> Given the decisions of this Court in *Kahriger* and *Lewis,* supra, which were on the books at the time of petitioner's trial, and left untouched by Albertson v. SACB, 382 U.S. 70, 86 S.Ct. 194, 15 L.Ed.2d 165, we are unable to view his failure to present this issue as an effective waiver of the constitutional privilege. 390 U.S. at 71, 88 S.Ct. at 715, 19 L.Ed.2d at 913–914.

■ The United States contends that even if the waiver must be knowing, and if waiver of specific defenses at trial assumes knowledge of their existence, there is something special about a guilty plea that makes the possible defenses irretrievable: "a plea of guilty waives all defenses and procedural defects which are not jurisdictional". That statement is true only when the defendant is able to assess the various defenses available to him, as well as the consequences of submitting to conviction. Otherwise, the requirements integral to accepting guilty pleas make no sense. See Fed.R.Crim.P. 11; McCarthy v. United States, 1969, 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418; Von Moltke v. Gillies, 1947, 332 U.S. 708, 68 S.Ct. 316, 92 L.Ed. 309.

■■ A plea of guilty is an abbreviated way of going down the list of possible defenses and privileges—right to counsel, jury trial, confrontation of witnesses, self-incrimination, etc.—and waiving each one.[1] The plea represents the relinquishment of a bundle of defenses, and has no magical implications with regard to finality beyond that. The whole does not exceed the sum of its parts. If one of the component waivers was ineffective because of the inadequate knowledge upon which it was made, the defect is not cured by virtue of the fact that the waiver was made implicitly, as part of a guilty plea.

In Haynes v. United States, 1968, 390 U.S. 85, 88 S.Ct. 722, 19 L.Ed.2d 923, the Supreme Court upheld the privilege against self-incrimination as a valid defense to prosecution under the National Firearms Act, under a rationale similar to that in *Marchetti.* Haynes had pleaded guilty. The Supreme Court in a footnote pointed out the absence of waiver: "Petitioner's plea of guilty did not, of course, waive his previous claim of constitutional privilege." 390 U.S. at 87, 88 S.Ct. at 725, 19 L.Ed.2d at 926.

Several post-*Marchetti* and *Grosso* decisions have rejected arguments that failure to assert the constitutional defense guaranteed by the Fifth Amendment,

1. See United States ex rel. Rogers v. Warden of Attica State Prison, 2 Cir. 1967, 381 F.2d 209, 213:
    > [W]e must be wary of blindly applying * * * [the guilty plea waiver] doctrine to every case involving such a plea. There is nothing inherent in the nature of a plea of guilty which *ipso facto* renders it a waiver of a defendant's constitutional claims. Rather, waiver is presumed because ordinarily such a plea is an indication by the defendant that he has deliberately failed or refused to raise his claims by available state procedures * * *."

constituted a waiver of the defendant's constitutional rights. In United States v. Manfredonia, 2 Cir. 1968, 391 F.2d 229, the court said:

> Since in *Marchetti* the privilege had been asserted at the trial, the government argues here that the appellants' failure to assert the privilege against self-incrimination as a defense at trial amounted to a waiver of protection. * * * At the time of the trial of these appellants the wagering statutes were valid and the decisions in Lewis v. United States, 1955, 348 U.S. 419, 75 S.Ct. 415, 99 L.Ed. 475 and United States v. Kahriger, 1952, 345 U.S. 22, 73 S.Ct. 510, 97 L.Ed. 754 were still applicable. There is no reason to suspect that appellants knowingly waived their Fifth Amendment privilege at trial. These defendants should not be required to anticipate the Supreme Court action overruling *Lewis* and *Kahriger* or compelled to make the futile gesture of raising the privilege at trial to preserve their rights in the event of an overriding decision. We believe the effect of the Supreme Court decisions in *Marchetti* and *Grosso* is to prevent enforcement of the wagering statutes as they are now designed because of the "substantiality of the risks of incrimination." 391 F.2d at 230.

Accord: Harris v. United States, 8 Cir. 1968, 390 F.2d 616; United States v. Lookretis, 7 Cir. 1968, 398 F.2d 64. See also Butler v. United States, 5 Cir. 1966, 361 F.2d 220; vacated and remanded for further consideration in light of *Marchetti* and *Grosso*, De Cesare v. United States, 1968, 390 U.S. 200, 88 S.Ct. 900, 19 L.Ed.2d 1036. Although these cases were all direct appeals from judgments which had not become final, the rationale on which they rest is applicable to the case before the Court.

■ We conclude that Lucia's failure to raise the self-incrimination defense in the trial court and his plea of guilty did not prevent his raising the point in the present action. See United States v. Miller, 4 Cir. 1969, 406 F.2d 1100.

## II.

The test for deciding the retroactivity of new constitutional standards of criminal procedure has been progressively developed in a recent line of Supreme Court decisions.[2] Linkletter v. Walker, 1965, 381 U.S. 618, 85 S.Ct. 1731, 14 L. Ed.2d 601; Tehan v. United States ex rel. Shott, 1966, 382 U.S. 406, 86 S.Ct. 459, 15 L.Ed.2d 453; Johnson v. New Jersey, 1966, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882; Stovall v. Denno, 1967, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199; Desist v. United States, 1968, 394 U.S. 244, 89 S.Ct. 1030, 22 L.Ed.2d 248. *Stovall* sets out the formula to be applied in each case:

> The criteria guiding resolution of the questions implicate (a) the purpose to be served by the new standards, (b) the extent of the reliance by law enforcement authorities on the old standards, and (c) the effect on the administration of justice of a retroactive application of the new standards. 388 U.S. at 297, 87 S.Ct. at 1970, 18 L.Ed. 2d at 1203.

"Foremost among these factors is the purpose to be served by the new court rule." Desist v. United States, 394 U.S. at 249, 89 S.Ct. at 1033. As the Court pointed out in *Desist* "it was principally the Court's assessment of the purpose of Mapp v. Ohio, 1961, 367 U.S. 643, 81 S.

2. Commentators have been active in this area. See Bender, The Retroactive Effect of an Overruling Constitutional Decision: Mapp v. Ohio, 110 U.Pa.L.Rev. 650 (1962); Currier, Time and Change in Judge-Made Law: Prospective Overruling, 51 U.Va.L.Rev. 201 (1965); Meador, Habeas Corpus and the "Retroactivity" Illusion, 50 U.Va.L.Rev. 1115 (1964); Mishkin, The Supreme Court, 1964 Term Foreword, The High Court, the Great Writ and the Due Process of Time and Law, 79 Harv.L.Rev. 56 (1965); Schaeffer, The Control of "Sunbursts": Techniques of Prospective Overruling. 42 N.Y.U.L.Rev. 631 (1967); Schwartz, Retroactivity, Reliability, and Due Process: A Reply to Professor Mishkin, 33 U.Chi.L.Rev. 719 (1966).

Ct. 1684. 6 L.Ed.2d 1081, which led it in *Linkletter* to deny those finally convicted the benefit of *Mapp's* extension of the exclusionary rule to the States". 394 U.S. at 249, 89 S.Ct. at 1033–1034. The exclusionary rule is "based on the necessity for an effective deterrent to illegal police action". When the court has made its rulings prospective only, it has done so on the rationale that the damage caused by the improper governmental behavior will not be undone or repaired by reversing existing convictions. Thus in *Linkletter*, the defendant's privacy had already been breached by an illegal search. In Mapp v. Ohio, the fruits of such searches were held inadmissible at trial. The deterrent purpose of the *Mapp* rule would not "be advanced by making the rule retrospective. The misconduct of the police has already occurred and will not be corrected by releasing the prisoners involved". *Linkletter*, 381 U.S. at 637, 85 S.Ct. at 1034.

In contrast, new · constitutional rules going to the fundamental fairness of a trial, the accuracy and reliability of the fact-finding process, rules that substantially reduce the likelihood that an innocent person will be convicted, have received retroactive application. For example, in Bruton v. United States, 1968, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476, overturning Delli Paoli v. United States, 1957, 352 U.S. 232, 77 S.Ct. 294, 1 L.Ed.2d 278, the Court held that the admission of a defendant's extra-judicial confession implicating a co-defendant violates the co-defendant's right to confront his accuser under the Sixth Amendment. In Roberts v. Russell, 1968, 392 U.S. 293, 295, 88 S.Ct. 1921, 1922, 20 L.Ed.2d 1100, 1103, the Court held that "[this] constitutional error presents a serious risk that the issue of guilt or innocence may not have been reliably determined.". The purpose of the new *Bruton* rule, greater accuracy in guilt-determination, applied to past as well as future trials, and the Court therefore extended *Bruton* retroactively.

There is no doubt that at the time of Lucia's arrest, indictment, and trial, the prosecution relied on the state of the law as represented by United States v. Kahriger and Lewis v. United States. The *Stovall* factor of reliance therefore weighs against retroactive application of the *Marchetti-Grosso* rule. We feel, however, that we should give greater weight to the purpose of *Marchetti* and *Grosso* [3] than to the factor of reliance. The purpose of the *Marchetti-Grosso* rule is to protect the constitutional privilege against a statutory system jeopardizing it. The purpose is not to deter unlawful police action. Nor is it to sharpen the fact-finding process. It does not involve guilt or innocence. Indeed, "The constitutional privilege was intended to shield the guilty and imprudent as well as the innocent and foresighted; * * *." *Marchetti*, 390 U.S. at 51, 88 S.Ct. at 704. The Supreme Court concluded that the objective of the statute—to force disclosure by punishing silence—was improper. Since the aim of the statute is constitutionally impermissible, courts should not continue to enforce its sanctions. Stated in terms of balancing *Stovall* factors, we consider the preservation of the Fifth Amendment privilege against self-incrimination more important than the fact that the government relied on earlier—now overruled—decisions. We disagree, therefore, with the conclusions the Sixth Circuit reached in Graham v. United States, 6 Cir. 1969, 407 F.2d 1313.

The third *Stovall* factor is the extent of the burden on the administration of justice that would result from retroactivity. The number of offenders presently in jail under the federal gambling tax laws must be small indeed. The government acknowledged in its brief that no one had been prosecuted under the wagering laws since the Supreme Court decided *Marchetti* and *Grosso*. According to the brief, 17 persons of the 1262 convicted under these laws in 1965 and 1966 received prison terms longer than

3. See Desist v. United States, 1969, 394 U.S. 244, 249 n. 14, 89 S.Ct. 1030, 22 L.Ed.2d 248.

one year. We do not have to fear a wholesale emptying of the jails. Nor will the courts and United States Attorneys be taxed with retrying old offenses on the basis of stale evidence. In short, the practical effects of retroactivity in this case will be minimal.

*Marchetti* and *Grosso* rest upon the constitutional principle that a man's dignity is violated when he is forced into the dilemma of either speaking against himself or suffering criminal sanctions. Lucia's dignity has already been violated, since the government has long since indicted, tried and punished him. In that sense the harm to him cannot be repaired, and he stands in Linkletter's position. Unlike Linkletter, however, he stands convicted of no act that the government now can legitimately punish.

The judgment of the district court is reversed and the cause is remanded for disposition consistent with this opinion.