**Alexander DESIMONE, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 519, Docket 33421.**

United States Court of Appeals, Second Circuit.

Argued March 17, 1970.

Decided May 1, 1970.

Francis J. Pavetti, New London, Conn. (Dupont, Pavetti & Dupont, New London, Conn., on the brief), for appellant.

Richard L. Winter, Asst. U. S. Atty. (Stewart H. Jones, U. S. Atty. for District of Connecticut, Richard P. Crane, Jr., Asst. U. S. Atty., on the brief), for appellee.

Before MOORE and FEINBERG, Circuit Judges, and BONSAL, District Judge.*

FEINBERG, Circuit Judge:

This case is one of the many after the *Marchetti-Grosso-Haynes* trilogy in which the scope and effect of those decisions must be assessed. Alexander Desimone appeals from denial by the United

* Of the Southern District of New York, sitting by designation.

States District Court for the District of Connecticut, Robert C. Zampano, J., of his petition under 28 U.S.C. § 2255 to set aside a plea of guilty of conspiring to violate section 5821 of the National Firearms Act. Finding no infringement of appellant's right not to incriminate himself, we affirm Judge Zampano's decision, which is reported at 303 F.Supp. 406.

## I.

Appellant was indicted in 1966 on three counts: two charged unlawful possession of a silencer in violation of section 5851 of the National Firearms Act, and one charged conspiracy to make a quantity of silencers without paying the tax required by section 5821, thus violating 18 U.S.C. § 371. After trial began, appellant pleaded guilty to the third count. After some backing and filling, including an oral motion to vacate the guilty plea, appellant was sentenced in July 1967; the two section 5851 counts were dismissed. Some six months later, the Supreme Court decided Marchetti v. United States, 390 U.S. 39, 88 S.Ct. 697, 19 L.Ed.2d 889 (1968); Grosso v. United States, 390 U.S. 62, 88 S.Ct. 709, 19 L.Ed.2d 906 (1968); and Haynes v. United States, 390 U.S. 85, 88 S.Ct. 722, 19 L.Ed.2d 923 (1968). Within a few months appellant filed a section 2255 petition, claiming that he was convicted of violating an unconstitutional statute. Judge Zampano held that *Haynes* was not retroactive and that, in any event, the requirements of section 5821 did not violate appellant's fifth amendment rights.

Appellant contends that the district judge was wrong on both issues. A third question is raised by the Government's argument that appellant waived the self-incrimination claim by his voluntary guilty plea. We do not find it necessary to resolve all of these issues. We hold, as will be seen below, that 26 U.S.C. § 5821 does not violate appellant's constitutional rights. Accordingly, we do not consider the retroactivity of the Supreme Court opinions cited above or the effect of appellant's guilty plea, although we note that these questions have occasioned differences of opinion between the circuits.[1]

## II.

At the time appellant pleaded guilty, section 5821 contained five subdivisions.[2] Subsections (a) and (b) provided for a tax of $200 upon the making of any firearm by any person not "engaged * * * in the business of manufacturing firearms."[3] Such a maker of the firearm, under subsections (c) and (d), paid the tax in advance; payment was represented by stamps provided by the Treasury. Finally—and it is to this that appellant particularly points—subsection (e) provided:

It shall be unlawful for any person subject to the tax imposed by subsection (a) to make a firearm unless, prior to such making, he has declared in writing his intention to make a

---

1. E. g., compare Meadows v. United States, 420 F.2d 795 (9th Cir. 1969), pet. for cert. filed 38 U.S.L.W. 3341 (Feb. 20, 1970); United States v. Lucia, 416 F.2d 920 (5th Cir. 1969); United States v. Miller, 406 F.2d 1100 (4th Cir. 1969); with Eby v. United States, 415 F.2d 319 (10th Cir. 1969); Mackey v. United States, 411 F.2d 504 (7th Cir.), cert. granted, 396 U.S. 954, 90 S.Ct. 426, 24 L.Ed.2d 419 (1969); Graham v. United States, 407 F.2d 1313 (6th Cir. 1969); cf. United States v. Manfredonia, 391 F.2d 229 (2d Cir. 1968).

2. The Gun Control Act of 1968, P.L. 90–618, 82 Stat. 1213, amended and substantially changed the National Firearms Act, including 26 U.S.C. § 5821.

3. A person in the business paid a special occupational tax, 26 U.S.C. §§ 5801, 5802. For statistics on the number of taxpayers under these sections, see Powell & Jones, Self-Incrimination and Fair Play—Marchetti, Grosso and Haynes Examined, 18 Am.U.L.Rev. 114, 124 n. 45 (1968).

firearm, has affixed the stamp described in subsection (d) to the original of such declaration, and has filed such original and a copy thereof. The declaration required by the preceding sentence shall be filed at such place, and shall be in such form and contain such information, as the Secretary or his delegate may by regulations prescribe. * * * If the person making the declaration is an individual, there shall be included as part of the declaration the fingerprints and a photograph of such individual.

Under the then applicable Treasury Regulations, the declaration of intent had to be "supported by a certificate of the local chief of police" or other acceptable person, and the certificate had to indicate that the fingerprints and photograph were those of the declarant, and that the firearm was intended "for lawful purposes." Treas. Reg. § 179.78 (1955), 20 Fed.Reg. 6739 (Sept. 14, 1955). It is conceded that under section 5848(1) a silencer falls within the definition of a firearm.

The constitutionality of section 5821 has not been passed upon by the Supreme Court. Haynes v. United States, *supra,* upon which appellant relies, did not deal with section 5821, but with the relationship between sections 5851 and 5841 of the National Firearms Act and the unconstitutional effect of the registration requirement thereunder. Section 5841 obliged any person possessing a firearm to register it; section 5851 made it unlawful to possess an unregistered firearm. The Court held that the "elements of the offenses created by the two sections are * * * identical," 390 U.S. at 94, 88 S.Ct. at 729, and that the provision requiring registration of the firearm would in most cases cut across the right not to incriminate oneself; accordingly, "a proper claim of the constitutional privilege * * * provides a full defense to prosecutions" under either section. *Id.* at 100, 88 S.Ct. at 732. The heart of the Court's opinion appears to be the following, *id.* at 96–97, 88 S.Ct. at 730:

The registration requirement is thus directed principally at those persons who have obtained possession of a firearm without complying with the Act's other requirements, and who therefore are immediately threatened by criminal prosecutions under §§ 5851 and 5861. They are unmistakably persons "inherently suspect of criminal activities." Albertson v. S. A.C.B., 382 U.S. 70, 79, 86 S.Ct. 194, 199, 15 L.Ed.2d 165. It is true, as the United States emphasizes, that registration is not invariably indicative of a violation of the Act's requirements; there are situations, which the United States itself styles "uncommon," in which a possessor who has not violated the Act's other provisions is obliged to register. Nonetheless, the correlation between obligations to register and violations can only be regarded as exceedingly high, and a prospective registrant realistically can expect that registration will substantially increase the likelihood of his prosecution. Moreover, he can reasonably fear that the possession established by his registration will facilitate his prosecution under the making and transfer clauses of § 5851. In these circumstances, it can scarcely be said that the risks of criminal prosecution confronted by prospective registrants are "remote possibilities out of the ordinary course of law." Heike v. United States, 227 U.S. 131, 144, [33 S.Ct. 226, 228, 57 L.Ed. 450] ; yet they are compelled, on pain of criminal prosecution, to provide to the Secretary both a formal acknowledgment of their possession of firearms, and supplementary information likely to facilitate their arrest and eventual conviction. The hazards of incrimination created by the registration requirement can thus only be termed "real and appreciable." Reg. v. Boyes, 1 B. & S. 311, 330; Brown v. Walker, 161 U.S. 591, 599–600 [16 S.Ct. 644, 647–648, 40 L.Ed. 819]. [Footnotes omitted.]

The other two cases in the trilogy—Marchetti v. United States, 390 U.S. 39, 88 S.Ct. 697, 19 L.Ed.2d 889 (1968) and Grosso v. United States, 390 U.S. 62, 88 S.Ct. 709, 19 L.Ed.2d 906 (1968)—dealt with the federal occupational and excise taxes on gambling rather than with the National Firearms Act. In *Marchetti*, the Court held that the requirement of registering a present intent to commence gambling activities and paying a special tax was incriminatory in the face of comprehensive state prohibitions on gambling, which made wagering "an area permeated with criminal statutes." 390 U.S. at 47, 88 S.Ct. at 702. On similar grounds, the Court in *Grosso* reversed a conviction for failure to pay the gambling excise tax.

Appellant claims that under these decisions section 5821 puts him to an unconstitutional choice if he makes a firearm: either remaining silent and suffering the penalties of the act or registering thereunder and incriminating himself. The incrimination results, according to appellant, because he thus identifies himself as a member of "a highly selective group inherently suspect of criminal activities." Haynes v. United States, 390 U.S. at 98, 88 S.Ct. at 731.

Similar arguments have met with a mixed reception in the courts. There are, it is true, authorities supporting appellant. In DePugh v. United States, 401 F.2d 346 (1968), the Eighth Circuit dismissed an indictment which alleged, *inter alia*, a conspiracy to violate section 5821 by making firearms (apparently machine guns) without paying the tax. The court noted that the law of Missouri, where the offense was committed, made illegal the sale, delivery or possession of a machine gun. A similar result was reached in United States v. Stevens, 286 F.Supp. 532 (D.Minn. 1968); the court there also looked to state law to show the risk of self-incrimination.[4] However, the bulk of recent authority points the other way. In United States v. Benner, 417 F.2d 421, 424–425 (1969), the Ninth Circuit specifically disagreed with *DePugh* and *Stevens,* cited above. In holding that the declaration of intent to manufacture required by section 5821 does not require self-incrimination, the court said, *id.:*

> Even so, it is not the manufacture of the firearms at which the law was aimed—the manufacture in and of itself is harmless. The concern is with the use of the firearm in the commission of murders, robberies and other crimes of violence. The maker of the firearm does not, by declaring his intent to make a firearm, make any declaration of an intention to do any illegal act. A firearm could be legally possessed in most states, and we specifically note that it could be legally possessed in Oregon, by a non-felon. We perceive a difference between a law which requires the declaration that one is engaged in an activity which is in itself criminal and one which requires a person to declare an intention to engage in an activity which is not in itself criminal and which does not of necessity lead to any criminal act. For this reason and because the area of the firearm is not permeated to the same extent with criminal statutes as are the wagering and marijuana areas, we do not believe that this case is governed by *Marchetti, Grosso* and *Leary,* [395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57]. [Footnote omitted.]

The court went on to consider Benner's argument that his status as a prior felon was a significant factor in weighing the possibility of self-incrimination. The court agreed, and pointed out that in Oregon one convicted of a felony against the person and property of another may not "own" or "control" any firearm "capable of being concealed upon the person." *Id.* 417 F.2d at 425. Since the sawed off rifle involved in

4. The firearm involved was a "sawed off" rifle. The statutes cited were Minn.Stat. 609.66, subd. 1(1, 5) and 609.67.

*Benner* fit that definition, the court remanded to determine whether at the time of manufacture Benner had such a prior conviction. If so, then the indictment could not constitutionally stand; compliance with section 5821 would have required Benner to "declare his intention to violate the laws of Oregon," *id.* at 425, an impermissible result. But otherwise Benner's constitutional claim would fail.

This view of section 5821 in *Benner* was approved by the Third Circuit in United States v. Thompson, 420 F.2d 536 (3d Cir. 1970). The district court in that case had quoted from United States v. Casson, 288 F.Supp. 86, 89 (D. Del.1968),[5] to the effect that compliance with section 5821 "establishes the legality rather than illegality of possession of a firearm" and "no past or present incriminating implication could flow from * * * compliance * * *." The Third Circuit approved this reasoning, pointing out that the district court had "left open to the defendant to show that [he] * * * made the gun * * * in a state which at the time prohibited such weapons and provided criminal sanctions. * * * The Government points out that such a weapon as the defendant possessed is legal in Delaware where it was possessed and seized." 420 F.2d at 542.

A similar result was reached in Lewis v. United States, 408 F.2d 1310 (10th Cir. 1969), which held that section 5821 did not require self-incrimination. In the course of its opinion, the court referred to the distinction set forth in earlier opinions, Mares v. United States,

319 F.2d 71 (10th Cir. 1963), and Russell v. United States, 306 F.2d 402 (9th Cir. 1962), between the registration required under section 5841 and the declaration of intent called for by section 5821. Registration under section 5841

amounted to an admission that the registrant possessed a firearm and that he did not make or acquire it in compliance with the Act. Thus, registration disclosed a violation of other laws.

408 F.2d at 1313, while under section 5821 "no violation of other laws was * * * compelled to be disclosed." *Id.*

## III.

■ This review of the cases indicates that the question whether section 5821 is constitutionally infirm is by no means simple. We have not decided it since *Haynes, Grosso,* and *Marchetti.*[6] Certainly, the case is not governed by the square holding of *Haynes,* which dealt primarily with the constitutionality of the registration called for by section 5841. That registration is not required in most cases from a person who has acquired a firearm legally, i.e., if he obtained it by transfer or importation or made it and there was compliance with other provisions of the Act covering those situations.[7] Therefore, section 5841, as applied to most persons, requires registration only from one who, if he registers, admits that he possesses a firearm and that he acquired it or made it illegally. It is true, as the Government argued in *Haynes,* that there are a few situations in which a posses-

5. Also relied on by Judge Zampano in this case.

6. Before those cases, see United States v. Della Rocca, 388 F.2d 525 (2d Cir.), vacated per curiam, 390 U.S. 745, 88 S.Ct. 1443, 20 L.Ed.2d 274 (1968).

7. 26 U.S.C. § 5841 provides:
Every person possessing a firearm shall register, with the Secretary or his delegate, the number or other mark identifying such firearm, together with his name, address, place where such firearm is usually kept, and place of business or employment, and, if such person is other than a natural person, the name and home address of an executive officer thereof. No person shall be required to register under this section with respect to a firearm which such person acquired by transfer or importation or which such person made, if provisions of this chapter applied to such transfer, importation, or making, as the case may be, and if the provisions which applied thereto were complied with.

sor who has not violated the Act has to register, e.g., if he found an abandoned firearm. But the Court disposed of that contention by pointing out that "the correlation between obligations to register and violations can only be regarded as exceedingly high," and held that:

> The registration requirement is thus directed principally at those persons who have obtained possession of a firearm without complying with the Act's other requirements, and who therefore are immediately threatened by criminal prosecutions * * *.

*Haynes,* 390 U.S. at 96, 88 S.Ct. at 730. This is all in sharp contrast to the effect of section 5821, the portion of the statute appellant attacks. A declaration under section 5821 of intention to make a firearm does not simultaneously admit a violation of another section of the National Firearms Act.

To be fair to appellant, however, he does not rely on the holding of *Haynes,* but on the emanations from that case and others, *including Grosso* and *Marchetti.* Thus, he points to the likelihood that a person like appellant who makes silencers will transfer them without complying with section 5814 of the Act;[8] accordingly, his registration under section 5821 will facilitate his prosecution. Appellant also argues that silencers are meant to be used on other firearms and his declaration would make him a prime suspect on possible charges involving other weapons. It may be conceded that a person like appellant does not ordinarily make silencers for his own amusement, but we do not think that the incrimination issue is so easily decided. In Varitimos v. United States, 404 F.2d 1030, 1034 (1st Cir. 1968), cert. denied, 395 U.S. 976, 89 S.Ct. 2126, 23 L.Ed.2d 765 (1969), the claim was made that:

> [E]ven though a firearm is acquired lawfully, its acquisition focuses suspicion on the transferee because of the legislative purpose of the Act. Thus, should a transferee subsequently engage in illegal activity involving a firearm, the order form would provide a link in the chain leading to conviction.

The court rejected the argument:

> [T]he protection of the Fifth Amendment privilege is inapplicable to prospective acts involving only a speculative and insubstantial hazard of incrimination. * * *

> In *Marchetti* the fact that 49 states prohibited the very activity disclosed by payment of the tax constituted a real hazard of incrimination. But here there is no prohibition, either state or federal, against possession of a firearm lawfully acquired under the National Firearms Act. Necessarily, a question of incrimination can arise only if a wholly different criminal act is performed at some point in the future. To accept appellant's argument would be tantamount to saying that a pharmacist should not be required to acknowledge receipt of certain drugs since he may secretly intend to distribute them without a prescription, and would therefore be supplying evidence of receipt which would incriminate him. [Footnote omitted.]

It is true that a registrant under section 5821 may subsequently transfer a silencer without obtaining the order form required by section 5814, thus violating that section, or that one of his customers may use the silencer in committing a crime. But we agree with the First Circuit that the possibility that appellant or

---

8. 26 U.S.C. § 5814(a) provides:

It shall be unlawful for any person to transfer a firearm except in pursuance of a written order from the person seeking to obtain such article, on an application form issued in blank in duplicate for that purpose by the Secretary or his delegate. Such order shall identify the applicant by such means of identification as may be prescribed by regulations under this chapter: *Provided,* That, if the applicant is an individual, such identification shall include fingerprints and a photograph thereof.

one of his customers may decide to commit a different criminal act in the future is not enough to support the fifth amendment claim.

Moreover, as the above quotation makes clear, the analogy to *Marchetti* is not compelling. The Court in that case stressed that "in Connecticut and throughout the United States, wagering is 'an area permeated with criminal statutes.'" 390 U.S. at 47, 88 S.Ct. at 702. A similar point was made with respect to state laws on marijuana in Leary v. United States, 395 U.S. 6, 16–18, 89 S. Ct. 1532, 23 L.Ed.2d 57 (1969), and to the risk under federal criminal laws flowing from an admission of membership in the Communist Party. See Albertson v. S.A.C.B., 382 U.S. 70, 77, 86 S.Ct. 194, 15 L.Ed.2d 165 (1965). In contrast, there is no other federal statute or law in appellant's home state of Connecticut which makes criminal the manufacture or possession of silencers.

█ Finally, we recognize that exemption from the coverage of section 5821 of those engaged in the business of manufacturing firearms raises a serious problem, since it supports the inference that Congress was aiming at "a relatively small group, many of whom are engaged in activities made unlawful by state and federal statutes." See *Grosso*, 390 U.S. at 74, 88 S.Ct. 716, 717 (Brennan, *J.*, concurring). But on balance we agree with the view of the Third, Ninth and Tenth Circuits that the hazard of incrimination here falls short of that in the decisions appellant relies upon. In short, on this record we hold that section 5821 did not compel appellant to incriminate himself and that his guilty plea should not be set aside on the ground urged.[9]

Judgment affirmed.

9. We note that in amending the National Firearms Act in 1968, Congress restricted the prosecutorial use of information submitted in connection with registration, 26 U.S.C. § 5848, as amended, which may make the problem presented here less difficult to resolve in the future. See *Haynes*, 390 U.S. at 98, 88 S.Ct. 722.

BONSAL, District Judge (dissenting):

I respectfully dissent.

In Haynes v. United States, 390 U.S. 85, 88 S.Ct. 722, 19 L.Ed.2d 923 (1968), Mr. Justice Harlan observed that the National Firearms Act, of which 26 U. S.C. § 5821 is a part, is "an interrelated statutory system for the taxation of certain classes of firearms," 390 U.S. at 87, 88 S.Ct. at 725, and that the definitions of "firearm" within the meaning of the Act, limited to such devices as sawed-off shotguns, carbines, automatic weapons, and silencers, were "apparently intended to guarantee that only weapons used principally by persons engaged in unlawful activities would be subjected to taxation." 390 U.S. at 87, 88 S.Ct. at 725. See United States v. Minor, 398 F.2d 511, 516 (2d Cir. 1968), aff'd, 395 U.S. 932, 89 S.Ct. 2000, 23 L.Ed.2d 447 (1969). This focus upon the unlawful is intensified under § 5821, which imposes a tax of "$200 for each firearm so made," payable in advance, upon persons who are not "in the business of manufacturing firearms." Manufacturers pay an occupational tax of $500 per year imposed under 26 U.S.C. § 5801, and register pursuant to § 5802 rather than § 5821. The confiscatory nature of the non-occupational tax and the requirement that it be paid in advance render suspect a conclusion that the statute is primarily a revenue measure, particularly when contrasted with the nominal annual tax imposed on "manufacturers."

As the majority observes, this case differs from *Haynes* in that a person registering under § 5821 would not be in violation of the other provisions of the Act so as to incriminate himself with respect to them. See Haynes v. United States, *supra*, 390 U.S. at 96, 97, 88 S. Ct. 722. But it is ingenuous to suppose

that registration under § 5821 would not itself be incriminating. A silencer is a useless piece of metal—unless it is to be used with a gun. The inference is unavoidable that the silencer is intended to be used, or to be transferred to someone who intends to use it; that use is necessarily with a firearm, and is necessarily illegal. The government does not suggest that there are legitimate uses for silencers, and none come to mind; uses which do come to mind are assassination and armed robbery. That Connecticut has no statutes against silencers *per se* shows only that the area is adequately covered by criminal statutes applicable to situations where a silencer might be used, such as statutes relating to firearms and crime. (The only Connecticut statute on silencers forbids their use in hunting, hunting not being a criminal activity.)

The relation between silencers and violent crime is so obvious that notwithstanding the nonexistence of a Connecticut statute, I thing that a person declaring his intent to manufacture silencers is incriminating himself. His declaration is not necessarily prospective in effect, but even if it were, the court in *Marchetti* recognized that prospectivity was not a bar to assertion of the privilege under these circumstances. Marchetti v. United States, 390 U.S. 39, 52–54, 88 S.Ct. 697 (1968).

Since § 5821 is directed at persons " 'inherently suspect of criminal activities,' " Haynes v. United States, *supra* at 96, 88 S.Ct. 697, a timely assertion of the right against self-incrimination is a bar to prosecution for failing to register under § 5821.

I do not think that petitioner waived his fifth amendment claim by pleading guilty prior to *Haynes, Marchetti,* and *Grosso.* United States v. Lucia, 416 F. 2d 920 (5th Cir. 1969); United States v. Manfredonia, 391 F.2d 229 (2d Cir. 1968).

I would reverse.