UNITED STATES of America,
Plaintiff-Appellee,

v.

Jesus MARTINEZ, Jr., Defendant-Appellant.

UNITED STATES of America,
Plaintiff-Appellee,

v.

Tomas Velasquez MARTINEZ,
Defendant-Appellant.

UNITED STATES of America,
Plaintiff-Appellee,

v.

Alejandro Garcia HANDY, Defendant-Appellant.

Nos. 19064–19066.

United States Court of Appeals,
Sixth Circuit.

June 15, 1970.

McCree, Circuit Judge, concurred in part and dissented in part and filed opinion.

Edward W. Merkel, Jr. (Court appointed), Cincinnati, Ohio, for appellant Jesus Martinez, Jr.

David S. Mann (Court appointed), Cincinnati, Ohio, for appellant Tomas Velasquez.

John P. Manton (Court appointed), Toledo, Ohio, for appellant Alejandro Garcia Handy.

Peter M. Handwork and William M. Connelly, Toledo, Ohio, for appellee; Robert B. Krupansky, U. S. Atty., William M. Connelly, Asst. U. S. Atty., Toledo, Ohio, on brief.

Before WEICK, McCREE and BROOKS *, Circuit Judges.

BROOKS, Circuit Judge.

This is a direct appeal by defendants-appellants from a conviction for violation of various federal narcotic laws. The defendant, Jesus Martinez, Jr., was convicted under a three count indictment charging sale of heroin without a written prescription (26 U.S.C. § 4705[a]); selling heroin knowing it had been imported into the United States in violation of 21 U.S.C. § 174; and participating in a conspiracy to violate the narcotic laws. The defendant, Tomas Martinez, Jesus Martinez's brother, and the defendant, Alejandro Handy, were only charged and convicted as being members of the conspiracy. Also named in the indictment as co-conspirators but not as defendants were Jesus Perez and Andres DeLaCerda.

The conspiracy of the defendants was to traffic in heroin in the Toledo, Ohio area, but there is no need to detail the facts of this case. The transcript of the trial establishes that there was sufficient and substantial evidence to support the verdicts of guilty returned by the jury on both the conspiracy and the substantive charges. Our examination of the entire record also reveals that the defendants received a fair trial free of any error affecting their substantial rights and we affirm the judgments of conviction.

Defendant, Jesus Martinez, has raised several issues, three of which attack the validity of his conviction. First, he alleges that the District Court erred in not informing him of his right to separate counsel in a trial for conspiracy. Jesus and his brother Tomas Martinez had privately retained an attorney to act as counsel for both during this trial. In support of his position he relies upon Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942). Glasser does stand for the general proposition that under certain circumstances an accused person is denied his right to effective assistance of counsel when an attorney defends two accused persons at the same trial. However, the record reveals that defendant has fallen considerably short of making out a case for relief along the lines of Glasser. There, counsel was appointed by the court to serve for another defendant over the objection of Glasser who had originally retained the attorney. In addition, there were numerous incidents which took place at the trial that could be pointed to as indicia of ineffective assistance of counsel directly precipitated by having had one attorney act for the two defendants. The present situation lacks any substantial similarity to Glasser. Here counsel was privately retained by both defendants and no objections were raised before or during trial. Furthermore, defendant has been unable to point to a single incident which indicated a lack of effective assistance of counsel in deprivation of his Sixth Amendment rights.

Another issue raised by Jesus Martinez is two-fold. First, he maintains it was reversible error for the District Court to admit as evidence certain material obtained by monitoring a telephone call made by him and by electric

* The Honorable Henry L. Brooks, then Chief Judge of the United States District Court for the Western District of Kentucky, sat on this case by designation.

"bugging" of his car. Second, he argues his Fourth Amendment rights were violated because the government did not provide its surveillance records for appellant's examination before the trial. Respecting the contention that the court erred in admitting certain "tainted" evidence, defendant argues that Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), makes evidence obtained by eavesdropping inadmissible. The simple answer to this argument is that Katz is to be applied prospectively, Desist v. United States, 394 U.S. 244, 89 S.Ct. 1030, 22 L.Ed.2d 248 (1968); Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965); United States v. Lucia, 416 F.2d 920 (5th Cir. 1969), and the alleged tainted evidence in this case was obtained before the Katz decision was rendered. However, there is a more basic answer to defendant's contention, that is, that Katz is not applicable under the facts in this case. In Katz a telephone booth was wired so that a conversation could be overheard without the consent of either party to the conversation. This is distinguishable from the present situation in which one member of the conversation consented to having federal agents listen in on the conversation. This Court has in a similar case held that evidence gathered in this fashion is legally obtained. See United States v. Gardner and Montgomery, 416 F.2d 879 (6th Cir. 1969), but cf. United States v. White, 405 F.2d 838 (7th Cir. 1969), cert. granted 394 U.S. 957, 89 S.Ct. 1305, 22 L.Ed. 2d 559 (1969).

■ Defendant's argument that he was denied his Fourth Amendment rights when he was not permitted access to the government's surveillance records hinges on whether the surveillance evidence was legally obtained. In Alderman v. United States, 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969), the issue was whether certain eavesdropping evidence was legally obtained. To reach a conclusion on this issue the government's surveillance records were required to be made available for an examination. The present case is outside the rule in Alderman. Here the method of gathering the alleged tainted evidence was admitted. The only purpose for which Alderman permits examination of the surveillance records is to determine whether the method used in gathering evidence was illegal. Defendant knew of the method and could argue the legality of it. There was no violation of defendant's rights in denying him access to these records.

■ Finally, Jesus Martinez attacks the constitutionality of the provisions of the narcotic laws under which he was convicted. Specifically, he alleges that the presumption in 21 U.S.C. § 174 that a person in possession of a "narcotic drug" is presumed to know that it was imported contrary to law is unconstitutional as denial of due process, and that the recording and registration provisions of the narcotic laws violate the protection against self-incrimination provided in the Fifth Amendment. The authorities, however, uphold the statute against both constitutional attacks. See Montgomery v. United States, 407 F.2d 1312 (9th Cir. 1969), upholding the statute against attack on the grounds that the registration provisions require self-incrimination; See Turner v. United States, 396 U.S. 398, 90 S.Ct. 642, 24 L.Ed.2d 610 (1970), upholding the presumption that possession of heroin is sufficient to presume that a person knew that the drug was imported illegally.

Tomas Martinez, Jesus' brother, was convicted of conspiring to violate the narcotic laws. He also makes numerous complaints. Two issues presented are already dealt with, they are (1) the constitutional attack on 21 U.S.C. § 174 and (2) the allegation that because one attorney served as trial counsel for both Jesus and Tomas Martinez they were denied their right to effective assistance of counsel. There are three additional alleged errors which he presents. Defendant, Tomas Martinez, first contends that he was improperly denied the opportunity to impeach his co-conspirator DeLaCerda who testified against him.

DeLaCerda had stated that while in prison Tomas had offered to introduce him to his brother, Jesus, so arrangements could be made for him to sell narcotics for Jesus when released from prison. The government offered this evidence to show the inception of the conspiracy and Tomas Martinez's role in it. DeLaCerda was not cross-examined with respect to this conversation. When Tomas took the stand in his own defense, he was not permitted to testify to what DeLaCerda said at the conversation on the grounds that a foundation for impeachment had not been laid. The court stated "you can tell what you said, but you can't advise the jury of any questions or answers Mr. DeLaCerda put to you."

■ Tomas maintains that no foundation need be laid to impeach a witness by contradiction on a material issue in a case. United States v. Klein, 187 F.2d 873 (7th Cir. 1951), cert. denied, 341 U.S. 952, 71 S.Ct. 1021, 95 L.Ed. 1374 (1951); Ewing v. United States, 77 U.S.App.D.C. 14, 135 F.2d 633, (1942), cert. denied, 318 U.S. 776, 63 S.Ct. 829, 87 L.Ed. 1145 (1942). But here there was no proffer of evidence showing that the testimony Tomas wanted to give was going to impeach on a matter material to the case. While the argument is made that since the crime of conspiracy is involved the entire conversation is material, we cannot agree. There could have been any number of matters discussed which were not material to the issue of whether a conspiracy existed and upon which DeLaCerda could not have been impeached. Tomas did deny ever having offered to introduce DeLaCerda to his brother so he could sell narcotics. Thus, the jury was given the opportunity to resolve any dispute arising in the testimony on whether or not Tomas was the impetus to, or took part in the conspiracy. On this crucial point Tomas was permitted to contradict DeLaCerda. However, if Tomas was prejudiced by the court's ruling on this matter, it is not shown in the record because Tomas made no proffer of evidence. Before such an alleged

evidentiary error can be reviewed it should, unless it is obvious, be made part of the record. Tanner v. United States, 401 F.2d 281 (8th Cir. 1968), cert. denied, 393 U.S. 1109, 89 S.Ct. 922, 21 L.Ed. 2d 806 (1968); Washington v. United States, 130 U.S.App.D.C. 374, 401 F.2d 915, 921, n. 31 (1968).

■ Tomas also argues it was error not to grant him a severance and a separate trial. The record shows that the District Court did not abuse its discretion in not granting separate trials, nor was defendant prejudiced. See Federal Rules of Criminal Procedure, Rule 14; United States v. Armel, 384 F.2d 51 (6th Cir. 1967); United States v. McKinney, 379 F.2d 259 (6th Cir. 1967).

It is also alleged to have been error for the District Court not to permit defendant, Tomas Martinez, the right to examine portions of the grand jury proceedings. Since there was no record made of the grand jury proceedings such a request, even if proper, could not have been granted.

Our review of the transcript also shows that, while the evidence to convict Tomas Martinez may have been quantitatively small, in terms of qualitative sufficiency, it was more than adequate.

■ Defendant, Alejandro Handy, also presents several issues for review. For the same reasons discussed above with respect to Tomas Martinez's identical contention, no error was committed in denying defendant, Handy, a separate trial. The other objection raised by defendant, Handy, requiring comment is that error was committed in admitting into evidence various exhibits which did not pertain to the charges against him. These exhibits were introduced as evidence in the government's case in chief against the other defendants. Whenever there is more than one defendant standing trial at the same time, it is inevitable that there will be introduced evidence which does not affect all the defendants. While there are situations in which this could prejudice the defend-

ants not affected by the evidence, here the jury was carefully instructed and no prejudice against the defendant occurred.

Affirmed.

McCREE, Circuit Judge (concurring in part and dissenting in part).

I agree with the court that the convictions of appellants Jesus Martinez, Jr., and Alejandro Handy should be affirmed. However, I would reverse the conviction of Tomas Martinez because I believe that the District Judge erroneously prevented his attorney from introducing relevant and competent evidence.

Tomas was in jail during the course of the entire conspiracy. The only acts he was charged with committing in fur- therance of the conspiracy were offering to introduce and introducing the co-conspirator DeLaCerda to his brother Jesus for the purpose of selling heroin. DeLaCerda testified for the Government and was permitted to give his account of these events. But the District Judge refused to allow Tomas to testify to his version of what DeLaCerda said during the alleged offer to make the introduction to Jesus. The court mistakenly concluded that Tomas was seeking to impeach DeLaCerda's testimony. Tomas' attorney objected to the rejection of this testimony, but did not make a proffer of proof, perhaps because he was confused by the District Judge's requirement that a foundation for the evidence be laid.[1]

---

[1]. The following is the relevant portion of the Transcript, pp. 526-29:

Q (by Mr. Maturen, counsel for appellant Tomas Martinez).

Q And Mr. DeLaCerda comes in?

A Yes.

Q Now, tell us what conversation took place.

A He approached us and said that he just—

MR. ROTATARI: Objection to what was said, objection to what he stated.

THE COURT: Objection sustained.

MR. MATUREN: May it please the Court, I would make my request that he be allowed to follow—to be allowed to have such testimony put in, for the reason that Mr. DeLaCerda has taken the stand and he has said what the conversation was.

Now, if I am going to show that the conversation was any different, I believe I would have to have a witness who was there to tell us. Otherwise, DeLaCerda's testimony stands and I have no way of rebutting refuting it.

MR. ROTATARI: I don't believe Mr. DeLaCerda said what anybody else told him.

THE COURT: Your client can testify to what he said to DeLaCerda.

MR. MATUREN: May it please the Court,—

MR. ROTATARI: (Interposing) If there was any different testimony, I don't recall any groundwork for impeachment being laid upon DeLaCerda to be introduced through this man's testimony.

MR. MATUREN: As far as impeachment is concerned, I think DeLaCerda's testimony stands by itself on that point.

May it please the Court, one of the important things of this case—and this is not something new that is brought before the jury—when Mr. DeLaCerda took the stand he said, "I went in, went up to Tomas and asked, 'what are you in for?' 'For narcotics,' and Tomas said, 'were you ever in Toledo?' Tomas said,"—

THE COURT: (Interposing) I understand what was said, Mr. Maturen, but as the District Attorney points out, if he wants to deny saying those things, you can ask him what he did or said, but if it is your intention to show the conversation was different, you should have put your version of it to Mr. DeLaCerda on his cross examination. But you didn't put it to him and, not having put it to him, you cannot now go into the conversation other than to have your client testify as to the things he did or did not say if he wants to deny what DeLaCerda said, but he cannot put other words in DeLaCerda's mouth because no ground work has been laid for doing it.

MR. MATUREN: I questioned both Mr. Perez and Mr. DeLaCerda thoroughly, and as far as Mr. DeLaCerda was concerned, it is my opinion and impression I went into that matter with him, and if Mr. DeLaCerda is going to stick to his story, I could—like you say, I can ask him ten times, but I will get the same answer, and the only way I felt—

THE COURT: (Interposing) These are highly technical matters, and I think the position that technical matters have to be handled in a technical manner, and if they are so handled and counsel on either side make any objections then I

In my view, the evidence Tomas sought to introduce was offered in direct contradiction of DeLaCerda's testimony and not as impeachment of his credibility. Even if we characterize the evidence as impeachment by contradiction, the law is clear that the proponent of direct relevant contradicting evidence need not lay a foundation just because the evidence may also impeach the testimony of another witness. United States v. Klein, 187 F.2d 873, 876 (7th Cir. 1951), cert. denied, 341 U.S. 952, 71 S.Ct. 1021, 95 L.Ed. 1374 (1951). This was not an attempt to impeach by extrinsic evidence of a collateral matter. It concerned the circumstances relied on by the prosecution to tie Tomas to the conspiracy charged in the indictment.

The court holds that a proffer was necessary because without it we cannot determine whether the evidence sought to be admitted was material. Under the facts in this case there can be no doubt that the evidence was material. What Tomas sought to give was a first-hand account (not hearsay) of a transaction which was one of only two which linked him to the conspiracy. Although he was permitted to narrate his own responses to DeLaCerda, the District Judge's refusal to allow him to testify to what DeLaCerda said obviously and prejudicially handicapped him in establishing his innocence.

Conspiracy cases are extremely difficult for juries to follow, and jurors sometimes have difficulty in not ascribing inculpating testimony to all defendants regardless of cautionary instructions. *See, e. g.,* Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968); Krulewitch v. United States, 336 U.S. 440, 452–454, 69 S.Ct. 716, 93 L.Ed. 790 (Jackson, J., concurring). Because of this danger, judges should be especially careful to make certain that conspiracy defendants' rights are protected. Here Tomas' link to the conspiracy was based on two brief conversations with DeLaCerda. He was not allowed to testify to his version of one of these when he took the stand. I would reverse his conviction and remand the case to the District Court for a new trial or for other proceedings not inconsistent with this opinion.

---

have no alternative but to sustain the objections.

I agree you went over it, you cross examined DeLaCerda at great length, but you didn't cross examine in the method required to lay the foundation for putting contrary statements to him. It is too late now to undertake to bring out that testimony since the Government objects to it.

MR. MATUREN: May it please the Court, I am not in my mind sure how thoroughly, if at all, I questioned Mr. DeLaCerda in regard to his original conversation with Tom, and the only way— I would say at this point in the week the only way I could be assured what took place is if the notes could be referred to.